# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN RE ADVOCATE AURORA HEALTH PIXEL LITIGATION | Lead Case No. 22-CV-1253-JPS<br><br>(Consolidated with Case Nos. 22-CV-1278-JPS; 22-CV-1305-JPS; 23-CV-00259-JPS; 23-CV-00260-JPS)<br><br>This Document Relates to: All Actions |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iv

MEMORANDUM IN SUPPORT ............................................................................1

I.   NATURE OF THE LITIGATION AND PROCEDURAL HISTORY...................................2

II.  SUMMARY OF THE SETTLEMENT ..................................................................3

    A.  The Class.............................................................................................3

    B.  Settlement Benefits to the Class ...............................................................4

    C.  The Release and the Class's Claims ...........................................................4

    D.  Class Representative Service Awards...........................................................4

    E.  Attorneys' Fees and Expenses ...................................................................5

    F.  Settlement Adminsitration and Notice.........................................................5

    G.  Class Members' Right to Opt Out or Object ..................................................5

    H.  Schedule for Settlement Administration ......................................................7

III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .......................7

    A.  Legal Standard ......................................................................................7

    B.  The Class is Very Likely to be Certified .......................................................9

        1.  The Class of 2,500,000 Satisifies Numerosity...........................................9

        2.  Common Questions of Law and Fact Exist  ..............................................9

        3.  Class Representatives' Claims are Typical of the Class...............................10

        4.  Class Representatives and Class Counsel Adequately Represent the Class ..........11

    C.  The Settlement is Well Within the Range of Approval .......................................12

        1.  The Strength of Plaintiffs' Case Balances Well Against the Amount Offered in the Settlement, and the Complexity, Length, and Expense of Further Litigation Favors Settlement Now.........................................13

        2.  Thus Far, There Has Been No Opposition to the Settlement and the Reaction of the Members of the Class Has Been Positive ...................................15

        3.  The Opinion of Competent Counsel is that the Settlement is Fair, Reasonable, and Adequate and Should be Approved...........................................15

    4.   The Stage of the Proceeding and the Amount of Discovery Completed Favors Settlement Now ........................................................................................15

D.  The Notice Program Should be Approved as it is the Best Notice Practicable under the Circumstances ............................................................................16

E.  The Rule 23(b)(3) Requirements are Satisfied ...........................................17

F.  The Service Awards are Reasonable ..........................................................18

G.  Class Counsel's Attorneys' Fees and Expenses are Reasonable ................19

CONCLUSION.................................................................................................................19

## Cases

*Aguilar v. Husco Int'l, Inc.*, No. 08-C-0154,
　No. 08-C-0154, 2009 WL 3102791 (E.D. Wis. Sept. 24, 2009)................................. 11

*Arandell Corp. v. Xcel Energy Inc.*,
　Nos. 07-cv-076, 09-cv-240, 2023 WL 2387813 (W.D. Wis. Mar. 7, 2023)........................ 9, 19

*Benoskie v. Kerry Foods, Inc.*,
　No. 19-cv-684-pp, 2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) ......................................... 18

*Bills v. TLC Homes Inc.*,
　No. 19-cv-148-pp, 2020 WL 5982880 (E.D. Wis. Oct. 8, 2020) ............................................ 18

*Chesemore v. Alliance Holdings, Inc.*,
　No. 09-cv-413-wmc, 2014 WL 12730484 (W.D. Wis. Apr. 14, 2014) ..................................... 9

*Chesemore v. Alliance Holdings, Inc.*,
　No. 09-cv–413, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) ............................................. 19

*Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*,
　797 F.3d 426 (7th Cir. 2015) ................................................................................................. 18

*De La Fuente v. Stokely-Van Camp, Inc.*,
　713 F.2d 225 (7th Cir. 1983) ................................................................................................. 11

*Donovan v. Estate of Fitzsimmons*,
　778 F.2d 298 (7th Cir. 1985) ............................................................................................. 7, 13

*EEOC v. Hiram Walker & Sons, Inc.*,
　768 F.2d 884 (7th Cir. 1985) ................................................................................................. 12

*Eisen v. Carlisle & Jacquelin*,
　417 U.S. 156 (1974)............................................................................................................... 17

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
　128 F.3d 1074 (7th Cir. 1997) ............................................................................................... 14

*Hunter v. Booz Allen Hamilton Inc.*,
　No. 2:19-cv-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023)......................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
　270 F.R.D. 330 (N.D. Ill. 2010) .................................................................................. 14, 15, 16

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................... 14

*In re TikTok, Inc., Consumer Privacy Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ......................................................... 8

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ....................................................................... 12

*Jones v. Cruisin' Chubbys Gentlemen's Club*,
  No. 17-cv-125-JDP, 2018 WL 11236460 (W.D. Wis. Nov. 21, 2018) ......... 8

*Kurowski v Rush System for Health*,
  No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ....................... 13

*McKinnie v. JP Morgan Chase Bank, NA*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009)........................................................... 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)....................................................................................... 17

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ....................................................................... 18

*Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*,
  735 F.3d 549 (7th Cir. 2013) ......................................................................... 7

*Pintor v. Hypro, Inc.*,
  No. 17-cv-890-pp, 2018 WL 4705847 (E.D. Wis. Oct. 1, 2018) ................. 18

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ..................................................................... 10

*Thillens, Inc. v. Community Currency Exch. Ass'n of Ill., Inc.*,
  97 F.R.D 668 (N.D. Ill. 1983)......................................................................... 9

*Towers v. City of Chicago*,
  173 F.3d 619 (7th Cir. 1999) ....................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).................................................................................. 10

*Weninger v. Gen. Mills Operations, LLC*,
  No. 18-CV-321-JPS, 2019 WL 1746703 (E.D. Wis. Apr. 18, 2019) ........... 18

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ............................................................. 8, 12

## Statutes

18 U.S.C. § 2511(1) ................................................................................. 2
Wis. Stat. § 146.81 ................................................................................. 2
Wis. Stat. §§ 100.18 ............................................................................... 3

## Rules

Fed. R. Civ. P. 23 ................................................................................. 9, 11
Fed. R. Civ. P. 23(e)(1)(B) ....................................................................... 16
Fed. R. Civ. P. 23(e) ............................................................................ 1, 8, 16
Fed. R. Civ. P. (b)(3) ......................................................................... 3, 17, 18
Fed. R. Civ. P. 23(a) ............................................................................ 9, 11
Fed. R. Civ. P. 23(a)(1) ............................................................................ 9
Fed. R. Civ. P. 23(a)(2) ..................................................................... 9, 10, 17
Fed. R. Civ. P. 23(a)(3) ....................................................................... 10, 11
Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 16
Fed. R. Civ. P. 23(e)(2); and (3) .................................................................. 8

## MEMORANDUM IN SUPPORT

Under Federal Rule of Civil Procedure 23(e), Plaintiffs Shyanne John, Richard Webster, Deanna Danger, James Gabriel, Katrina Jones, Derrick Harris, Amber Smith, Bonnie LaPorta, Alistair Stewart, and Angel Ajani (collectively, "Plaintiffs") submit this memorandum of law in support of their unopposed motion for preliminary approval of class action settlement with Defendant Advocate Aurora Health, Inc. ("Advocate" or "Defendant"). This is a class action arising from Defendant's alleged disclosure of Plaintiffs' and Class Members' personally identifying information ("PII") and protected health information ("PHI") (collectively, "Private Information") without their consent to third parties like Meta Platforms, Inc. ("Meta" or "Facebook") and Google through tracking pixels ("Pixels") that were installed on Defendant's public websites, LiveWell App and MyChart Portal (collectively referred to as "Website"). Defendant denies the material allegations of the Complaint and denies liability.

The proposed Settlement will provide substantial cash benefits through the $12,225,000 non-reversionary common fund to all Settlement Class Members (the "Class Members") whose Private Information was allegedly disclosed without their consent through Defendant's use of the Pixel. Plaintiffs respectfully request that the Court preliminarily approve the Settlement because it is fair, reasonable, and adequate and includes a comprehensive Notice Program that is the best means of providing Notice under the circumstances, and satisfies the requirements of Federal Rule of Civil Procedure 23(e). Defendant does not oppose the relief requested in the Motion. Preliminary approval is appropriate because the Settlement is "within the range of possible approval."

# I.     NATURE OF THE LITIGATION AND PROCEDURAL HISTORY

Plaintiffs Shyanne John and Angelica Hudy initiated this Lawsuit on October 24, 2022 against Advocate alleging that their Private Information was disclosed to third parties through the use of third-party Pixels without Plaintiffs' and Class Members' consent. Doc. 1. Plaintiff Richard Webster filed a similar class action complaint against Defendant in this District on October 27, 2022 (Case No. 2:22-CV-01278) and Plaintiff Deanna Danger also filed a similar compliant in this District on November 3, 2022 (Case No. 2:22-CV-01305). On November 22, 2022, Plaintiffs John, Hudy, Webster and Danger filed an unopposed motion to consolidate (Doc. 5) and an unopposed motion to appoint interim class counsel (Doc. 6). On November 29, 2022, the Court consolidated the three cases under the current case caption. On December 22, 2022, the Court granted Plaintiffs' request for appointment of interim class counsel and appointed Gary K. Klinger of Milberg and Terence R. Coates of Markovits, Stock & DeMarco, LLC as interim class counsel for Plaintiffs. Doc. 22.

Thereafter, Plaintiffs filed an Amended Complaint on January 23, 2023, adding Plaintiffs James Gabriel, Katrina Jones, Derrick Harris, Amber Smith, and Bonnie LaPorta. Doc. 20. Two additional similar cases were then transferred from the Northern District of Illinois and consolidated into this Lawsuit on April 5, 2023. Doc. 24. A Second Amended Complaint was then filed on May 5, 2023, adding Plaintiffs Alistair Stewart and Angel Ajani. Doc. 27. Plaintiffs' Second Amended Complaint alleges eleven causes of action: (1) Invasion of Privacy – Intrusion Upon Seclusion; (2) Invasion of Privacy – Publication of Private Facts; (3) Unjust Enrichment; (4) Breach of Implied Contract; (5) Breach of Confidence/Professional Negligence; (6) Violations of Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1) *et seq*.; (7) Violation of Confidentiality of Patient Health Care Records, Wis. Stat. § 146.81 *et seq.*; (8) Wisconsin

Deceptive Trade Practices Act, Wis. Stat. §§ 100.18 *et seq.*; (9) Violation of Statutory Duty to Maintain Confidentiality of Patient HealthCare Records, Illinois Stat. 410 ILCS § 50, *et seq.*; (10) Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Stat. §§ 505/1, *et seq.*; and (11) Violations of the Illinois Deceptive Trade Practices Act, 815 Illinois Stat. §§ 505/2, *et seq.*

Settlement negotiations took place over the course of approximately six months including two mediations, one in person on February 6, 2023, in Milwaukee and one remotely on June 1, 2023. Declaration of Gary M. Klinger in Support of Preliminary Approval of Class Action Settlement ("Klinger Decl."), ¶ 34 (**Exhibit 3**). Both mediation sessions were conducted under the guidance of Retired United States Magistrate Judge David E. Jones of Resolute Dispute Resolution Nationwide – a skilled mediator. *Id*. The February mediation was productive but did not result in a settlement. *Id*. The June mediation was a full-day mediation resulting in a settlement in principle. *Id*. The Parties then negotiated the terms of the comprehensive Settlement Agreement that is now being presented to the Court for review and preliminary approval. *Id*.

## II.     SUMMARY OF THE SETTLEMENT

### A.  The Class

Under the Settlement Agreement and Federal Rule of Civil Procedure Rule 23(b)(3), the Parties agree to the conditional certification for settlement purposes of the following Settlement Class (the "Class") of 2,500,000:

> All individuals residing in the United States whose Personal Information or health information was or may have been disclosed to a third party without authorization or consent through any Tracking Pixel on Defendant's websites, LiveWell App, or MyChart patient portal between October 24, 2017 and October 22, 2022. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, and directors, as well as the judges presiding over this matter and the clerks of said judges. This exclusion does not apply to those employees of Defendant and its Related Parties who received Defendant's October 22, 2022 notification regarding

its usage of Tracking Pixels.

Settlement Agreement, ¶ 13(oo).

**B. Settlement Benefits to the Class**

Under the Settlement, Advocate will establish a $12,225,000 non-reversionary Settlement Fund from which Class Members submitting valid claims will receive pro rata cash payments of the amounts remaining in the Settlement Fund capped at $50 per Class Member, after the deduction of Class Counsel's Attorneys' Fees and Litigation Expenses, the Settlement Administrator's fees and expenses, and Service Awards to the Class Representatives. To participate in the Settlement and receive a cash payment, Class Members merely need to submit a paper or online Claim Form on or before the Claim Deadline. Settlement Agreement, ¶¶ 35, 39. Furthermore, Advocate has agreed that it will implement remedial measures to ensure its use of Tracking Pixels materially complies with the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.*, ¶ 17.

**C. The Release of the Class's Claims**

In exchange for Advocate's $12,225,000 payment, Plaintiffs and Class Members will release and discharge Advocate from any and all claims that relate in any way to the Pixel Disclosure or Defendant's use of Tracking Pixels, or that were or could have been asserted in the Litigation. *Id.*, ¶ 84.

**D. Class Representative Service Awards**

Class Representatives have diligently pursued this matter on behalf of themselves and the Class. Due to their efforts, Class Representatives will seek Service Awards in the amount of $3,500 each, subject to Court approval. *Id.*, ¶ 66. The Service Awards are fair, reasonable, and adequate because of Class Representatives' efforts on behalf of the Class and the substantial recovery achieved for the Class in this case.

### E. Attorneys' Fees and Expenses

The Settlement permits Class Counsel to seek an award of attorneys' fees up to $4,278,750, which is 35% of the $12,225,000 Settlement Fund and reasonable Litigation Expenses not to exceed $30,000.00. *Id.*, ¶ 65. Class Counsel's experience in data privacy class action cases and ability to efficiently manage this Litigation were vital in procuring the $12,225,000 Settlement Fund. Klinger Decl., ¶¶ 52, 54.

### F. Settlement Administration and Notice

The Parties agreed to utilize Kroll Settlement Administration, LLC as the Settlement Administrator for this matter. Settlement Agreement, ¶ 13(nn). Kroll has vast experience handling the settlement administration for class action settlements, including many data privacy class actions such as this one. Declaration of Scott Fenwick in Support of Preliminary Approval of Class Action Settlement ("Kroll Decl."), ¶ 2 (**Exhibit 4**). The proposed Notice Program in this case is robust and consists of direct notice to Class Members through mailing the Postcard Notice to all Class Members for whom Advocate has a valid mailing address, emailing the Notice to Class Members for whom Defendant has a valid email address, and posting the Long Form Notice on the Settlement Website. Settlement Agreement, ¶¶ 32, 43-54; Kroll Decl., ¶¶ 6-13. Defendant shall also post notice of the Settlement on its website for a period of thirty (30) days. All important documents in this case will be posted on the Settlement Website for the purpose of permitting the Class easy access to information about this Litigation and Settlement. Settlement Agreement, ¶ 13(rr). The Notice Date, the date by which Notice will be issued to the Class, is 60 days after this Court potentially grants Preliminary Approval of Class Action Settlement. *Id.*, ¶¶ 13(u), 46.

### G. Class Members' Right to Opt-Out or Object

Class Members have 60 days from the Notice Date to Opt-Out of the Settlement or Object

to the Settlement. *Id.*, ¶¶ 13(w), 13(y), 13(z), 57. In order to validly Opt-Out from the Settlement, Class Members must submit a Request for Exclusion that (a) states the Settlement Class Member's full name, address and telephone number; (b) contains the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian or person acting under a power of attorney; and (c) states unequivocally the Settlement Class Member's intent to be excluded from the Settlement. *Id.*, ¶ 13(ll). In order to validly object to the Settlement, the Class Member's Objection must (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof that the Settlement Class Member is a member of the Settlement Class; (iv) state whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an Objection to any proposed class action settlement in the past three (3) years. *Id.*, ¶ 56. All Class Members will be apprised of their right to opt-out and/or object to the Settlement through the Notice Program, including the Postcard Notice.

### H.  Schedule for Settlement Administration

The Settlement Agreement includes the following Settlement Timeline to efficiently identify a schedule for proceeding with this Settlement including Settlement Administration:

### SETTLEMENT TIMELINE

| From Order Granting Preliminary Approval | |
|---|---|
| Defendant will Provide the Class List to the Settlement Administrator | +30 days |
| Defendant's payment of $4,225,000.00 to Settlement Administrator | +30 days |
| Notice Date | +60 days |
| Class Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Costs and Expenses | +90 days |
| Objection Date | +120 days |
| Opt-Out Date | +120 days |
| Claims Deadline | +150 days |
| | |
| **Final Approval Hearing** | 180 days from Order Granting Preliminary Approval |
| Motion for Final Approval | 14 days before Final Approval Hearing |
| | |
| **From Effective Date** | |
| Defendant's payment of $8,000,000.00 to Settlement Administrator | +30 days |
| Payment of Attorneys' Fees and Expenses Class Representatives' Service Awards | +45 days |
| Mailing of Claim Payments to Claimants | +45 days |
| Distribution of the Residual Funds to the Charitable Healthcare Recipients | +180 days |
| Deactivation of Settlement Website | +180 days |

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.  Legal Standard

Public policy generally favors and encourages settlements. *Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*, 735 F.3d 549, 556 (7th Cir. 2013). Indeed, there is an "overriding public interest in favor of settlement of class action suits." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) (quotation marks and citation omitted); *see also*

*McKinnie v. JP Morgan Chase Bank, NA*, 678 F. Supp. 2d 806, 811 (E.D. Wis. 2009) ("Federal courts look favorably upon the settlement of class action lawsuits.").

When preliminary approval of class action settlement is sought under Rule 23(e), the district court must consider three essential factors: (1) whether it is probable the class will be certified for purposes of judgement on the proposed settlement; (2) whether the proposed settlement is within the range of possible approval with regard to the criteria included in Rule 23(e)(2); and (3) direct notice to the class in a manner that is the practicable under the circumstances of the case. *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083-84 (N.D. Ill. 2021). The second factor, whether the proposed settlement is within the range of possible approval, balances six additional criteria: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citation omitted); *In re TikTok*, 565 F. Supp. 3d at 1083-1084.

If the Court finds the Settlement within the range of possible approval at the time of preliminary approval, notice of the Settlement will be given to Class Members, and a hearing scheduled to consider final settlement approval. Accordingly, the Court assesses the ultimate question of fairness only after the final hearing, after notice of the settlement has been given to the class members, and after the class members have had the opportunity to voice their view of the settlement. Moore's Federal Practice, 23.165[3] (3d ed. 2005). Indeed, "[i]n this circuit, the practice is for the court to give its preliminary approval after reviewing the proposed settlement and then to give final approval after notifying the class members and holding a hearing." *Jones*

*v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-JDP, 2018 WL 11236460, at *1 (W.D. Wis. Nov. 21, 2018).

Plaintiffs now request that the Court grant preliminary approval of the Settlement, which only requires that the Court find that the proposed Settlement is fair, reasonable, and adequate and "within the range of possible approval." *Chesemore v. Alliance Holdings, Inc.*, No. 09-cv-413-wmc, 2014 WL 12730484, at *1 (W.D. Wis. Apr. 14, 2014).

### B. The Class is Very Likely to be Certified

Under Rule 23(a), the court must conclude that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

#### 1. The Class of 2,500,000 Satisfies Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). The Seventh Circuit has deemed 40 class members to be sufficient to establish numerosity. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Wisconsin federal courts have recently found "thousands" of class members "easily" satisfies Rule 23's numerosity requirement. *Arandell Corp. v. Xcel Energy Inc.*, Nos. 07-cv-076, 09-cv-240, 2023 WL 2387813, at *2 (W.D. Wis. Mar. 7, 2023). Here, the 2,500,000 Class Members undoubtedly satisfy numerosity. *Thillens, Inc. v. Community Currency Exch. Ass'n of Ill., Inc.*, 97 F.R.D 668, 677 (N.D. Ill. 1983) ("Where the class is large, the numbers alone are dispositive of the impracticability of joinder.").

#### 2. Common Questions of Law and Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement

is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (internal quotation marks and citation omitted).

Here, there are questions of law and fact common to the proposed Class that predominate over any individual questions. These questions include, but are not limited to:

- whether Defendant owed a duty to Plaintiffs and members of the Class to adequately protect their Private Information and to provide timely and accurate notice of its use of the Pixel to Plaintiffs and the Class, and whether it breached these duties;

- whether Defendant violated federal and state laws thereby breaching its duties to Plaintiffs and the Class as a result of its use of the Pixel;

- whether Defendant knew or should have known that its use of the Pixel transmitted Private Information to third parties without consent;

- whether Defendant's conduct caused the unauthorized disclosure of Plaintiffs' and Class Members' Private Information; and,

- whether Defendant failed to inform Plaintiffs and the Class of the Pixel in a timely and accurate manner.

### 3. Class Representatives' Claims are Typical of the Class

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (internal citations omitted). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the

Class Members represented. Here, Plaintiffs' claims are typical of the claims of the Class because both claims arise out of the same course of conduct by Defendant—use of the Pixel—and rest on exactly the same legal theory—whether Defendant owed Plaintiffs and Class Members a duty to adequately protect their Private Information and not disclose it without authorization, and whether it breached these duties. Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. Class Representatives and Class Counsel Adequately Represent the Class

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requires an absence of potential conflicts between named representatives and class members and that [the class representatives] will vigorously prosecute the case." *Aguilar v. Husco Int'l, Inc.*, No. 08-C-0154, 2009 WL 3102791, at *2 (E.D. Wis. Sept. 24, 2009) (internal citations omitted). Plaintiffs have no conflicts with the Class and have actively participated in the case. Klinger Decl., ¶ 50. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 200 data privacy class actions in state and federal courts throughout the country. *Id*. ¶¶ 52, 54. Class Counsel have led this Litigation from the outset, including efficiently consolidating this matter into one proceeding and working with any additional cases as they were filed and/or transferred to this District. *Id*. ¶¶ 31-33. Class Counsel's extensive experience with data privacy class actions was integral to resolving this matter for a substantial sum within a year of the case being filed. *Id*. ¶¶ 52, 54. Accordingly, Class Representatives and Class Counsel will adequately represent the Class.

### C. The Settlement is Well Within the Range of Approval

The Settlement is fair, reasonable, and adequate, and well within the range of possible approval because it provides substantial cash benefits to all Class Members through the $12,225,000 Settlement Fund. The Settlement was reached while the status of the merits of the case was still uncertain and permits the Partis to avoid the uncertainty and expense of prolonged litigation. The Settlement Agreement satisfies each of the factors courts within the Seventh Circuit analyze in assessing whether a proposed settlement agreement is fair, reasonable, and adequate:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong*, 773 F.3d at 863 (citation omitted).

In weighing these factors, a district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). The Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99 (internal quotations and citation omitted). Further, "[t]he essence of settlement is compromise . . . [t]hus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). All factors weigh in favor of granting preliminary approval of class action settlement in this matter and conditionally certifying the Class for settlement purposes.

1. **The Strength of Plaintiffs' Case Balances Well Against the Amount Offered in the Settlement, and the Complexity, Length, and Expense of Further Litigation Favors Settlement Now**

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan*, 778 F.2d at 309. Here, Defendant disputes Plaintiffs' allegations and denies that it is liable for any alleged harm caused to Plaintiffs and/or the Class. Defendant indicated it would strenuously defend the case and relied on decisions such as *Kurowski v Rush System for Health*, No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) for the proposition that Plaintiffs lack any viable damages claims (dismissing plaintiffs' breach of implied duty of confidentiality, intrusion upon seclusion, and violations of federal Wiretap Act, Illinois Consumer Fraud and Deceptive Business Practices Act, and Illinois Uniform Deceptive Trade Practices Act claims in a pixel class action while permitting only plaintiffs' injunctive relief claim under the Illinois Uniform Deceptive Trade Practices Act to survive). While Plaintiffs are confident they have arguments and authorities supporting their allegations and claims, the number of issues in this case, which centers on a developing area of law—pixel litigation—creates significant uncertainty. Even assuming Plaintiffs would survive Defendant's motion to dismiss, there is no guarantee that the Court or a jury would find Plaintiffs' arguments more compelling during a trial or subsequent appeals.

Additionally, there are inherent risks with taking any pixel class action to trial, including pre-trial risks of obtaining class certification and defeating summary judgment. And plaintiffs in pixel data privacy cases often allege injuries, such as loss of control of their sensitive information and invasion of privacy, which are the subject of controversy. Even if Plaintiffs are able to achieve class certification and Plaintiffs are successful at trial, or if Defendant obtains summary judgment, Defendant or Plaintiffs would likely appeal, causing further delay and increasing expenses. The

Settlement allows for Class Members to obtain certain benefits soon—as opposed to potentially waiting for years—and eliminates the potential of receiving no benefits.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (internal citation omitted); *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, at *6 (S.D. Ohio May 2, 2023) (same). This case is no different in that it is a complex class action case based on a new trend of pixel tracking software litigation. The complexity, length, and expense of continued litigation favors settlement now. Litigating this case to a favorable conclusion would require a considerable amount of time and resources including extensive electronic discovery, class certification, summary judgment and a potential trial. The length of time and expense associated with pursuing this pixel privacy class action weighs in favor of accepting the Settlement now. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)). This factor also weighs in favor of preliminary approval. Thus, given the risks Plaintiffs face going forward, the significant Settlement Fund is balanced well against the obstacles Plaintiffs would be required to overcome to achieve a successful result potentially many years in the future.

### 2. Thus Far, There Has Been No Opposition to the Settlement and the Reaction of the Members of the Class to the Settlement Has Been Positive

Understanding that class notice is yet to be issued and, as a result, that no Class Members beyond the proposed Class Representatives have had the opportunity to review the proposed Settlement or the ability to object to it, consideration of this factor is premature. Accordingly, this factor is neutral in the analysis at this stage of the proceedings.

### 3. The Opinion of Competent Counsel is that the Settlement is Fair, Reasonable, and Adequate, and Should Be Approved

Class Counsel is familiar with data privacy class action litigation and fully endorses the proposed Settlement. Indeed, the work of proposed Class Counsel in this action to date, as well as their experience prosecuting complex litigation matters, demonstrates that they are well-qualified to represent the Class and opine on the fairness of the proposed Settlement. Klinger Decl., ¶¶ 51, 52, 54. Here, Class Counsel relied on their vast experience handling data privacy class actions, including pixel privacy cases, to efficiently oversee several matters being consolidated into this Litigation, drafting and filing multiple amended complaints, and skillfully negotiating a substantial Settlement Fund for the benefit of the Class. *Id*., ¶¶ 26, 27, 54. This factor strongly supports granting preliminary approval.

### 4. The Stage of the Proceedings and the Amount of Discovery Completed Favors Settlement Now

The Parties participated in informal confirmatory discovery for settlement purposes in order to evaluate the merits of the case. *Id*., ¶¶ 31, 32, 34. Plaintiffs were able to make informed decisions about the size of the Class, merits of the Class's allegations and legal claims, and Defendant's financial resources available to pay for a settlement and/or judgment. *Id*. In

conducting this due diligence, Plaintiffs have spent significant time and effort researching and preparing this case. *Id.* Thus, this factor supports preliminary approval of the Settlement.

### D. The Notice Program Should be Approved as it is the Best Notice Practicable under the Circumstances

Here, the Notice Program is based the list of impacted individuals whose names, addresses, and other contact information are maintained by Defendant. Settlement Agreement, ¶¶ 44, 46. The Settlement Administrator will provide direct email notice to the Class or otherwise provide notice via U.S. Mail. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 351 (approving direct notice via email for former customers and via U.S. Mail if email notice was ineffective). Accordingly, the Notice Program includes a high rate of direct notice to Class Members. Further, the Settlement provides for a claims process that requires minimal documentation from Class Members while conferring significant benefits to the Class. Settlement Agreement, ¶ 35. Accordingly, the simplified claims process weighs in favor of preliminary approval of the Settlement.

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Thus, Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to present their objections." *Towers v. City of Chicago*, 173 F.3d 619, 628 (7th Cir. 1999).

The proposed Notice meets these requirements. The Settlement Administrator will provide Notice pursuant to the Notice Program as follows: the Settlement Administrator shall send the Postcard Notice to all Class Members for whom Defendant has valid mailing and/or email addresses. Settlement Agreement, ¶¶ 32, 44, 48-49 (**Exhibit 2**). The Postcard Notice, attached as Exhibit C to the Settlement Agreement, is clear and concise and includes all information required

by Rule 23(c)(2)(B).[1] Furthermore, the Settlement Administrator will establish a Settlement Website and a toll-free telephone number that Class Members can call for more information regarding the Settlement. Kroll Decl., ¶ 15.

The proposed Notice Program is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Thus, the proposed method of Notice described above satisfies due process requirements. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also* Kroll Decl., ¶ 13.

### E.  The Rule 23(b)(3) Requirements are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." Fed. R. Civ. P. 23(b)(3). Predominance and superiority exist in this case. The  numerous  questions common to the Class, including those listed above, demonstrate commonality under Rule 23(a)(2), and predominate over any individual issues. The key elements of Plaintiffs' claims— the existence of the pixel on Defendant's Website and related unauthorized sharing of Plaintiffs' Private Information to third parties, Defendant's knowledge or constructive knowledge of those unauthorized disclosures, and the existence and amount of resulting damages, for example—are common issues that predominate for the entire Class, and thus the class is

---

[1] Specifically, it provides detailed information concerning: (a) the rights of Class Members, including the how and by when to lodge objections or opt out; (b) the nature of the litigation and the claims at issue; (c) the proposed Settlement; (d) the available recoveries to Class Members; (e) the process for filing a proof of claim; (f) that fees and expenses are to be sought by Plaintiffs' counsel from the Settlement Fund; and (g) the date of the Final Approval Hearing. It further advises Class Members on how to obtain additional information about the Settlement, including the Long Form Notice and Settlement Agreement, from the Settlement Website.

"sufficiently cohesive to warrant adjudication by representation." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (citation omitted). Moreover, the predominance requirement "scarcely demands commonality as to all questions." *Id.* Accordingly, the predominance element under Rule 23(b)(3) is satisfied.

Furthermore, a class action is the superior method for the fair and efficient adjudication of the claims in this case. Class Members' individual damages have relatively low dollar amounts and the large size of the Class makes it too burdensome and expensive to prosecute each Class Member's claims individually. Moreover, judicial economy is promoted through resolving this matter under the superior method of a class action. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015). With Rule 23(a) and Rule 23(b)(3) satisfied, certification of the proposed Settlement Class is appropriate.

### F. The Service Awards are Reasonable

The Class Representatives have remained engaged in this Litigation including reviewing and approving the terms of the Settlement Agreement. Their collective efforts have been integral to the $12,225,000 Settlement Fund obtained in this matter. Courts within this District have approved service awards at or above the $3,500 Service Awards sought in this case. *See Weninger v. Gen. Mills Operations, LLC*, No. 18-CV-321-JPS, 2019 WL 1746703, at *1 (E.D. Wis. Apr. 18, 2019) (granting $5,000 service award); *Bills v. TLC Homes Inc.*, No. 19-cv-148-pp, 2020 WL 5982880, at *5 (E.D. Wis. Oct. 8, 2020) (granting $3,500 service award); *Benoskie v. Kerry Foods, Inc.*, No. 19-cv-684-pp, 2020 WL 5769488, at *5 (E.D. Wis. Sept. 28, 2020) (granting $5,000 service award); *Pintor v. Hypro, Inc.*, No. 17-cv-890-pp, 2018 WL 4705847, at *1 (E.D. Wis. Oct. 1, 2018) (granting $5,000 service award). Accordingly, Class Representatives' requests for $3,500 Service Awards each are reasonable under the circumstances and warrant preliminary approval.

### G.  Class Counsel's Attorneys' Fees and Expenses are Reasonable

Class Counsel will separately file a motion for an award of attorneys' fees not to exceed 35% of the Settlement Fund and reimbursement of litigation expenses not to exceed $30,000. Settlement Agreement, ¶ 65. Wisconsin federal courts routinely award fee requests that are 35% of the settlement fund in addition to the reimbursement of litigation expenses. *Arandell Corp.*, 2023 WL 2387813, at *3-4 (preliminarily approving a fee request of 35% plus litigation expenses and noting that "the same 35% net fee recovery was approved in six prior Wisconsin class settlements."); *Chesemore v. Alliance Holdings, Inc.*, No. 09-cv–413, 2014 WL 4415919, at *7 (W.D. Wis. Sept. 5, 2014). Notably, there is no "free sailing" clause in the Settlement, and Plaintiffs' forthcoming fee and expenses request will be subject to approval by this Court, and the Court itself will retain discretion to ensure any fee and expense request is reasonable. Settlement Agreement, ¶¶ 65, 68, 76(g). Finally, the Settlement Agreement's effectiveness and finality are not dependent on any award of fees, costs, and expenses. *Id.* ¶ 68.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court: (1) certify the Class for purposes of the Settlement; (2) preliminarily approve the Settlement as set forth in the Settlement Agreement; (3) approve the form and manner of Notice of the Settlement to the Class; and (4) set a hearing date for Final Approval of the proposed Settlement. *See* **Exhibit 1**, Proposed Order Granting Preliminary Approval of Class Action Settlement.

Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606

Phone: 866.252.0878
gklinger@milberg.com

Terence R. Coates
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com
dgould@msdlegal.com

*Interim Co-Lead Class Counsel*

Nola J. Hitchcock (WI Bar No. 1015817)
Mary C. Flanner (WI Bar No. 1013095)
**CROSS LAW FIRM, S.C.**
845 North 11th St.
Lawyers' Building
Milwaukee, WI 53233
Tel: (414) 224-0000
Fax: (414) 273-7055
njhcross@crosslawfirm.com
mflanner@crosslawfirm.com

*Local Counsel*