## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN RE ADVOCATE AURORA HEALTH PIXEL LITIGATION | Lead Case No. 22-CV-1253-JPS<br><br>(Consolidated with Case Nos. 22-CV-1278-JPS; 22-CV-1305-JPS; 23-CV-00259-JPS; 23-CV-00260-JPS)<br><br>This Document Relates to: All Actions |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    SUMMARY OF THE LITIGATION.................................................................................1

II.   THE TERMS OF THE SETTLEMENT AGREEMENT .............................................2

      A.  Settlement Class.................................................................................................2

      B.  Settlement Benefits ...........................................................................................3

      C.  Notice and Claims Process................................................................................3

          1.  Notice.......................................................................................................3

          2.  Claims, Objections, and Requests for Exclusion ...................................4

      D.  Attorneys' Fees, Expenses, and Service Awards...............................................5

III.  ARGUMENT ...............................................................................................................5

      A.  Final Class Certification for Settlement Purposes is Appropriate ...................5

          1.  The Elements of Rule 23(a) Are Satisfied ..............................................6

              a.  *The Class of 2,540,567 Satisfies Numerosity*...............................6

              b.  *Commonality is Satisfied*.............................................................6

              c.  *Typicality is Satisfied* .................................................................7

              d.  *Plaintiffs and Class Counsel Adequately Represent the Class* .........7

          2.  The Requirements of Rule 23(b)(3) are Met in the Settlement Context.................8

      B.  The Notice Program Preliminarily Approved by the Court was the Best Notice
          Practicable under the Circumstances, and was Resoundingly Successful....................9

      C.  The Settlement Agreement Merits Final Approval.......................................11

          1.  Plaintiffs' Case Was Risky and the $12,225,000 Settlement Fund is a
              Substantial Recovery ..............................................................................12

          2.  The Complexity, Expense, Likely Duration of the Litigation, and
              Substantial Risk for Plaintiffs Warrants Final Approval of the Settlement .........13

          3.  The Class Overwhelmingly Supports the Settlement...........................15

          4.  Opposition to the Settlement is Minimal and is Meritless ..................16

*a.* *Stanley E. Guokas's Objection is Well-Intentioned but Unavailing* ................ 17

*b.* *Mary Boryu, Christine Gleason, and Tyler Dorner's Objections Fail Because They Had the Ability to Opt-Out of the Settlement and Generally Complain the Settlement Amount is Too Low* ................................. 17

*c.* *Class Member Theodore Wynnychenko's Spray-Shot Objection Should Be Overruled* ................................................................................................ 19

    *i.* *Attorneys' Fees of 26% of the Settlement Fund are Appropriate* ............. 19

    *ii.* *Class Counsel's Fee Request Complies With Seventh Circuit Guidance Regarding Fee Multipliers* ........................................ 22

    *iii.* *Market Rates in Other Data Privacy Cases are Controlling* .................. 23

    *iv.* *Class Counsel Complied with Fed. R. Civ. P. 23(h) and Were Not Required to Submit a Lodestar Crosscheck in their Motion for Attorneys' Fees* ........................................................................ 25

    *v.* *Data Privacy Class Action Cases Remain Risky* ....................................... 29

    *vi.* *Class Counsel Properly Notified the Class that the Fee Request Would Be Up to 35% of the Settlement Fund, Expenses Would be Capped at $30,000, and the Motion for Attorneys' Fees and Expenses Would be Posted on the Settlement Website After it was Filed* ................................. 29

    *vii.* *Courts Routinely Approve Class Action Settlements Wherein Any Objections or Exclusions are Submitted via Mail* ..................................... 31

    *viii.* *It is Permissible to Request Court Approval of a Cy Pres Recipient When it is Determined that Any Residual Funds Exist* ........................... 33

    *ix.* *The $50 Cap on Settlement Payments to Class Members is Not Arbitrary and Will Not Limit Class Member Payments in This Case* ....... 36

5.    Class Counsel Support the Settlement ......................................................... 37

6.    Plaintiffs' Obtained Ample Information to Forge the Substantial Settlement Fund ........................................................................................ 38

7.    The Other Rule 23(e) Factors Support the Settlement .............................. 39

**IV.**    **CONCLUSION** ................................................................................................. 39

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## Cases

*Adams v. Aztar Indian Gaming Co., LLC*,
No. 3:20-cv-143, 2023 WL 6536785 (S.D. Ind. Aug. 11, 2023) ............................................ 14

*Am. C.L. Union v. U.S. Gen. Servs. Admin.*,
235 F. Supp. 2d 816 (N.D. Ill. 2002) ................................................................................... 16

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 8, 9

*Aranda v. Caribbean Cruise Line, Inc.*,
No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ..................................................... 36

*B. Sanfield, Inc. v. Marshall Field & Co.*,
No. 90 C, 20192, 1991 WL 166942 (N.D. Ill. Feb. 25, 1991) ................................................. 13

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842, 2017 WL 2268853 (S.D. Cal. May 24, 2017) .............................................. 32

*Bedont v. Horizon Actuarial Servs., LLC*,
No. 1:22-CV-01565-ELR, 2022 WL 3702117 (N.D. Ga. May 12, 2022) ................................. 37

*Behrens v. Landmark Credit Union*,
No. 17-CV-101-JDP, 2018 WL 3130629 (W.D. Wis. June 26, 2018) ..................................... 21

*Bell v. Pension Comm. of Ath Holding Co., LLC*,
No. 1:15-cv-02062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .......................................... 26

*Benson v. Doubledown Interactive, Ltd. Liab. Co.*,
No. 18-cv-0525, 2023 WL 3761929 (W.D. Wash. June 1, 2023) ........................................... 27

*Birchmeier v. Caribbean Cruise Line, Inc.*,
896 F.3d 792 (7th Cir. 2018)......................................................................................... 21, 34

*Connolly v. Nat'l Sch. Bus. Serv., Inc.*,
177 F.3d 593 (7th Cir. 1999).................................................................................................. 23

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998)................................................................................................ 23

*DeMarco v. Avalonbay Communities, Inc.*,
No. 15-628, 2017 WL 960355 (D.N.J. Mar. 13, 2017)............................................................ 32

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ................................................................................ 35

*Doe v. Medstar Health, Inc.*,
    No. 24-C-20-000591, 2023 WL 4931348 (Md.Cir.Ct. Mar. 10, 2023) ................... 14

*Eirhart v. Libbey-Owens-Ford Co.*,
    1990 WL 223029, 921 F.2d 278 (7th Cir. 1990) .................................................... 10

*Eisen v. Carlisle & Jacqueline*,
    417 U.S. 156 (1974) ................................................................................................ 9

*Elzen v. Advisors Ignite USA LLC*,
    No. 22-C-859, 2024 WL 195473 (E.D. Wis. Jan. 18, 2024) ..................................... 6

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ............................................................................ 20, 27

*Geatreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ................................................................................. 37

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................. 31

*Glass v. UBS Fin. Serv*s.,
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................... 27

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ................................................................................. 23

*Hartley v. Univ. of Chicago Med. Ctr.*,
    No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ............................ 12, 13

*Hunter v. Booz Allen Hamilton*,
    No. 2:19-cv-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023) ......................... 13

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) (overruling ........................................................ 18

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................... 14, 31

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 13

*In re Baby Prod. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) ................................................................ 34

*In re Broiler Chicken Antitrust Litig.*,
   No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ................... 24

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ..................................................... 26

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ............................................................ 33

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021) ............................................ 16, 23

*In re Forefront Data Breach Litig.*,
   No. 21-cv-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ........................ passim

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ................................................................ 14

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   No. 0:21-MD-3015, 2023 WL 2284684 (S.D. Fla. Feb. 28, 2023) .................... 19, 25

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................. 16

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) ................................................................ 28

*In re Petrobras Sec. Litig.*,
   No. 14-CV-9662 (JSR), 2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019) ................................................................ 34, 35

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   No. 11-MD-2258-ABJ (MDD), 2014 WL 7800046 (S.D. Cal. July 10, 2014) ............. 33

*In re Stericycle Sec. Litig.*,
   35 F.4th 555 (7th Cir. 2022) ................................................................ 26

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ................................................................ 27

*In re TikTok, Inc. Consumer Priv. Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................. 7

*In re TikTok, Inc., Consumer Privacy Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022) ........................................................ 11, 22, 30

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
   No. 11-MD-2247, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) ....................... 33, 34

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   No. 10-CV-426-WMC, 2015 WL 13546111 (W.D. Wis. Jan. 5, 2015) ............ 22, 25

*Keeling v. Esurance Ins. Co.*,
   660 F.3d 273 (7th Cir. 2011) ........................................................................ 22

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ........................................................................ 16

*Keith v. Back Yard Burgers of Neb.*,
   No. 8:11-CV-00135, 2014 WL 4781914 (D. Neb. Sept. 23, 2014) ...................... 33

*King v. Trek Travel, LLC*,
   No. 18-CV-345-WMC, 2019 WL 6790398 (W.D. Wis. Dec. 12, 2019) ................ 20

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ............................................................... 20, 21, 23

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) .................................................................... 18

*Kurowski v. Rush Sys. for Health*,
   No. 22 C 5380, 659 F. Supp. 3d 931 (N.D. Ill. 2023) .................................. 12, 13

*Kurowski v. Rush Sys. for Health*,
   No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ............................ 12

*Leung v. XPO Logistics, Inc.*,
   326 F.R.D. 185, 202 (N.D. Ill. 2018) ......................................................... 14, 20

*Long v. HSBC USA Inc.*,
   No. 14-cv-6233, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ......................... 14

*McFields v. Dart*,
   982 F.3d 511 (7th Cir. 2020) .......................................................................... 7

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009) ........................................................... 24

Case 2:22-cv-01253-JPS    Filed 02/23/24    Page 7 of 51    Document 47

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ...................................................................... 8

*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir.2000) ...................................................................... 24

*Neeck v. Badger Bros. Moving, LLC*,
No. 19-CV-834-WMC, 2021 WL 1945820 (W.D. Wis. May 14, 2021) ................................. 20

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
292 F. Supp. 3d 1018 (S.D. Cal. 2017) ............................................................ 18

*Okonski v. Progressive Cas. Ins. Co.*,
No. 23-CV-01548, 2023 WL 6214529 (N.D. Ohio Sept. 25, 2023) ................................... 37

*Pavlik v. FDIC*,
No. 10 C 816, 2011 WL 5184445 (N.D. Ill. Nov. 1, 2011) ......................................... 27

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ...................................................................... 21

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .............................................................................. 11

*Rankin v. Am. Greetings, Inc.*,
No. 2:10-cv-01831, 2011 WL 13239039 (E.D. Cal. July 6, 2011) ................................... 27

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ...................................................................... 30

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir. 1993) ........................................................................ 7

*Retsky Family Ltd. P'ship v. Price Waterhouse*, LLP,
No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......................................... 20

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................... 35

*Rosado v. Ebay Inc.*,
No. 5:12-CV-04005, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ................................... 18

*Ross v. Gossett*,
33 F. 4th 433 (7th Cir. 2022) ...................................................................... 9

Case 2:22-cv-01253-JPS    Filed 02/23/24    Page 8 of 51    Document 47

*Schellhorn v. Timios, Inc.*,
No. 2:221-cv-08661, 2022 WL 4596582 (C.D. Cal. May 10, 2022) .......................................... 38

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................... 14, 23

*Shy v. Navistar Int'l Corp.*,
No. 3:92-CV-00333, 2022 WL 2125574 (S.D. Ohio June 13, 2022) ................................ 10, 37

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) .................................................................................... 20, 23

*Silverman v. Motorola, Inc.*,
No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012) ............................................... 26

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ............................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................................................... 6

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ...................................................................................... 22, 26

*Wright v. Nationstar Mortg. LLC*,
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ............................................ 26

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ......................................................................................... 11

## Statutes

18 U.S.C. § 2511(1) ........................................................................................................ 1
28 U.S.C. § 1712(b)(1) .................................................................................................. 30
Wis. Stat. § 146.81 .......................................................................................................... 2
Wis. Stat. §§ 100.18 ........................................................................................................ 2

## Rules

Fed. R. Civ. P. 23 .................................................................................................... passim
Rule 23(a) ....................................................................................................................... 6
Rule 23(a)(1) ................................................................................................................... 6
Rule 23(a)(2) ................................................................................................................... 6
Rule 23(a)(3) ................................................................................................................... 7
Rule 23(a)(4) ................................................................................................................... 7
Fed. R. Civ. P. 23(b)(3) ............................................................................................ 2, 8, 9
Rule 23(c)(2)(B) ...................................................................................................... 9, 10, 11

Fed. R. Civ. P. 23(e) ................................................................................. 9, 11, 12
Fed. R. Civ. P. 23(e)(2) ....................................................................................... 12
Rule 23(e)(3) ........................................................................................................ 12
Fed. R. Civ. P. 23(f) ....................................................................................... 15, 34
Fed. R. Civ. P. 23(h) ...................................................................................... 25, 30

## Other Authorities

5 Newberg & Rubenstein on Class Actions § 15:102 (6th ed.) ................................. 22

Brian T. Fitzpatrick, *The Conservative Case for Class Actions*, Chicago: The University of
Chicago Press (2019) ........................................................................................... 28

Sandra R. McCandless et al., Am. Bar Ass'n, *Report on Contingent Fees in Class Action
Litigation*, 25 Rev. Litig. 459, 471 (2006) Pub. L. 90–219 ...................................... 28

Pub. L. 90–219 ....................................................................................................... 32

# I.    SUMMARY OF THE LITIGATION

Plaintiffs Shyanne John and Angelica Hudy initiated this Lawsuit on October 24, 2022, against Defendant Advocate Aurora Health ("Advocate" or "Defendant") alleging that their Private Information was disclosed to third parties through the use of third-party tracking pixels without Plaintiffs' and Class Members' consent. ECF No. 1. Plaintiff Richard Webster filed a similar class action complaint against Defendant in this District on October 27, 2022 (Case No. 2:22-CV-01278) and Plaintiff Deanna Danger also filed a similar complaint in this District on November 3, 2022 (Case No. 2:22-CV-01305). On November 22, 2022, Plaintiffs John, Hudy, Webster, and Danger filed an unopposed motion to consolidate (ECF No. 5) and an unopposed motion to appoint interim class counsel (ECF No. 6). On November 29, 2022, the Court consolidated the three cases under the current case caption. On December 22, 2022, the Court granted Plaintiffs' request for appointment of interim class counsel and appointed Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and Terence R. Coates of Markovits, Stock & DeMarco, LLC as interim class counsel for Plaintiffs. ECF No. 22.

Thereafter, Plaintiffs filed an Amended Complaint on January 23, 2023, adding Plaintiffs James Gabriel, Katrina Jones, Derrick Harris, Amber Smith, and Bonnie LaPorta. ECF No. 20. Two additional similar cases were then transferred from the Northern District of Illinois and consolidated into this lawsuit on April 5, 2023. ECF No. 24. A Second Amended Complaint was then filed on May 5, 2023, adding Plaintiffs Alistair Stewart and Angel Ajani. ECF No. 27. Plaintiffs' Second Amended Complaint alleges eleven causes of action: (1) Invasion of Privacy – Intrusion Upon Seclusion; (2) Invasion of Privacy – Publication of Private Facts; (3) Unjust Enrichment; (4) Breach of Implied Contract; (5) Breach of Confidence/Professional Negligence; (6) Violations of Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1) *et seq.*;

(7) Violation of Confidentiality of Patient Health Care Records, Wis. Stat. § 146.81 *et seq.*; (8) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18 *et seq.*; (9) Violation of Statutory Duty to Maintain Confidentiality of Patient HealthCare Records, Illinois Stat. 410 ILCS § 50, *et seq.*; (10) Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Stat. §§ 505/1, *et seq.*; and (11) Violations of the Illinois Deceptive Trade Practices Act, 815 Illinois Stat. §§ 505/2, *et seq.*

Settlement negotiations took place over the course of approximately six months including two mediations, one in person in Milwaukee on February 6, 2023, and another remotely on June 1, 2023. ECF No. 35-3 (Klinger Decl. iso Prelim. Approval), ¶ 32. Both mediation sessions were conducted under the guidance of Retired United States Magistrate Judge David E. Jones of Resolute Dispute Resolution Nationwide—a skilled mediator. *Id*. The February mediation was productive but did not result in a settlement. *Id*. The June mediation was a full-day mediation resulting in a settlement in principle. *Id*. The Parties then negotiated the terms of the comprehensive Settlement Agreement that is now presented to the Court for final approval. *Id*.

## II.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  Settlement Class

Pursuant to Federal Rule of Civil Procedure 23(b)(3) and the terms of the Settlement Agreement, the Settlement Class (the "Class") is defined as:

> All individuals residing in the United States whose Personal Information or health information was or may have been disclosed to a third party without authorization or consent through any Tracking Pixel on Defendant's websites, LiveWell App, or MyChart patient portal between October 24, 2017 and October 22, 2022. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, and directors, as well as the judges presiding over this matter and the clerks of said judges. This exclusion does not apply to those employees of Defendant and its Related Parties who received Defendant's October 22, 2022 notification regarding its usage of Tracking Pixels.

Settlement Agreement, ¶ 13(oo). Based on Advocate's records, the Class has 2,540,467 members.

2

### B. Settlement Benefits

In accordance with the Settlement Agreement—and upon final approval—a non-reversionary Settlement Fund in the amount of $12,225,000 will be created. Class Members with valid claims will receive pro rata cash payments up to $50 per Class Member from the amount remaining in the Settlement Fund after accounting for Class Counsel's Attorneys' Fees and Litigation Expenses, the Settlement Administrator's fees and expenses, any taxes owed by the Settlement Fund, and Service Awards to Class Representative. Class Members could claim pro rata cash payments by submitting a paper or online Claim Form on or before the Claim Deadline. Settlement Agreement, ¶¶ 35, 39. Furthermore, to guarantee its use of Tracking Pixels adhere to the Health Insurance Portability and Accountability Act ("HIPAA"), Advocate is implementing remedial measures. *Id*. ¶ 17.

### C. Notice and Claims Process

#### 1. Notice

Kroll Settlement Administration, LLC ("Kroll") was selected as the Settlement Administrator in this matter, Settlement Agreement, ¶ 13(nn). Kroll executed an extensive Notice Program, providing direct notice via mail to Class Members with a valid mailing address, via email to Class Members with a valid email address, and posting the Long Form Notice on the Settlement Website, www.advocateaurorasettlement.com. Settlement Agreement, ¶¶ 32, 43-54; Declaration of Scott M. Fenwick of Kroll Settlement Admin. LLC in connection with Final Approval ("Kroll Final Approval Decl."), ¶¶ 2, 6-13 (**Exhibit 3**). The Notice program was overwhelmingly successful. The Postcard Notice had a 98.18% reach rate for Class Members to whom notice was mailed. *Id.* ¶ 11. This is consistent with the Federal Judicial Center Guidelines, which recommend direct notice to 70-95% of the Class in order to satisfy due process requirements. *Id.* Under the

3

Settlement Agreement, Advocate posted notice of the Settlement on its website for thirty (30) days, while Kroll posted all relevant documents for this matter on the Settlement Website to provide Class Members easy access to information about the Litigation and the Settlement. Settlement Agreement, ¶ 13(rr). As of February 21, 2024, Kroll received 363,304 Claim Forms through the mail and 207,659 electronically filed through the Settlement Website—a running total of 570,963 claims in this case. *See* Kroll Final Approval Decl., ¶ 12. To date, Kroll has reviewed and validated 529,912 claims—a valid claims rate of roughly 20.86%.[1] *Id.* Kroll's notice and settlement administration costs, which were noted as being at a minimum of $1,600,000 within Plaintiffs' Memorandum in Support of Their Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 39 at 7, n.3), has increased to $2,750,000, capped, due to the substantial increase of claims received and validated. Kroll Final Approval Decl., ¶ 16.

### 2. Claims, Objections, and Requests for Exclusion

The claims process was structured to provide all Settlement Class Members with sufficient time to review the terms of the Settlement Agreement and submit a claim, object to the Settlement, and/or opt-out of the Settlement. The Notice Program provided Class Members until December 19, 2023, to file a claim or opt-out of the Settlement. *Id.* ¶ 14; Settlement Agreement, ¶¶ 13(w), 13(y), 13(z), 57. To date, out of 2,540,567 Class Members, the Claims Administrator has received only 71 exclusion requests and five objections. Kroll Final Approval Decl., ¶ 15; *see also* ECF Nos. 40, 42, 45. The 76 total exclusions and objections represent 0.003% of all Class Members.

---

[1] The 20.86% claims rate only includes the 529,912 claims already validated. If one were to calculate the claims rate based upon all claims submitted, that rate would be approximately 22.5%.

### D. Attorneys' Fees, Expenses, and Service Awards

Under the terms of the Settlement Agreement (and as described in the Notice), Class Counsel was permitted to request the Court approve an award of attorneys' fees not to exceed thirty-five percent (35%) of the Settlement Fund plus reasonable Litigation Expenses not to exceed $30,000.00. Settlement Agreement, ¶ 65. Class Counsel shall also request the Court approve service awards of $3,500 for each of the named Plaintiffs in recognition of their efforts in the Litigation and commitment on behalf of the Settlement Class. *Id.* ¶ 66. Plaintiffs' Memorandum in Support of Their Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards sought $4,278,750.00 in attorneys' fees (35% of the Settlement Fund), $23,356.02 in reimbursement in expenses, and Class Representative Service Awards in the amount of $3,500 each to the Class Representative Awards was "subject to being updated before the Final Approval hearing." ECF No. 39 at 16. Due to the tremendous claims rate in this case and the corresponding increased settlement administration costs of $2,750,000, Class Counsel voluntarily reduce their fee request from $4,278,750.00 to $3,250,000.00. Joint Declaration of Terence R. Coates and Gary M. Klinger in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Class Counsel Final Approval Decl."), ¶ 17 (**Exhibit 2**). This adjusts Class Counsel's fee request substantially downward—from 35% of the Settlement Fund to approximately 26% of the Settlement Fund. Furthermore, Class Counsel's adjusted fee request of $3,250,000.00 comprises approximately 34.5% of the net settlement fund. *Id*.

### III. ARGUMENT

### A. Final Class Certification for Settlement Purposes is Appropriate

This Court preliminarily approved class certification for settlement purposes in its August 21, 2023 Order. ECF No. 36. At this juncture, final approval is appropriate.

5

### 1. The Elements of Rule 23(a) Are Satisfied

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, all four elements are satisfied.

#### a. The Class of 2,540,567 Satisfies Numerosity

Rule 23(a)(l) requires that plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." "While there is no bright-line rule for numerosity, there is little question that a class of more than 14,000 is sufficiently numerosity under Rule 23(a)(1)." *Elzen v. Advisors Ignite USA LLC*, No. 22-C-859, 2024 WL 195473, at \*3 (E.D. Wis. Jan. 18, 2024) (internal citations omitted). Here, there are 2,540,567 Class Members, easily satisfying the numerosity requirement. Kroll Final Approval Decl., ¶ 7.

#### b. Commonality is Satisfied

Rule 23(a)(2) requires showing the existence of questions of law or fact common to the class that are susceptible to common answers. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Common questions exist where the "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "For purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359. Here, Plaintiffs' claims turn on whether Defendant disclosed their Private Information without their consent. Resolution of that inquiry revolves around evidence that does not vary from class member to class

6

member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once. The commonality requirement is satisfied.

### c. Typicality is Satisfied

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "Generally, a class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020) (internal citations and quotations omitted). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented. Here, the claims all involve Defendant's alleged unconsented disclosure of Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs' claims are typical of the Class, and they are appropriate Class Representatives.

### d. Plaintiffs and Class Counsel Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The test for assessing adequacy of representation under Rule 23(a)(4) "has two components: (1) 'the representatives must not possess interests which are antagonistic to the interests of the class,' and (2) 'the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation.'" *In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) (internal citations omitted); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). Here, Plaintiffs and Settlement Class Counsel are adequate representatives of the Class. Plaintiffs have no conflicts with the Class and have actively participated in the case. Class Counsel Final Approval Decl., ¶¶ 6, 22-23; *see also* ECF Nos. 39-2 through 39-11. Furthermore, they were active participants in the Litigation and Settlement process,

and each submitted declarations in support of this Settlement. *Id*. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 200 data privacy class actions in state and federal courts throughout the country and several similar class actions involving the improper use of pixel tracking technologies. Class Counsel Final Approval Decl., ¶ 24. The adequacy requirement is therefore satisfied.

## 2. The Requirements of Rule 23(b)(3) are Met in the Settlement Context

Plaintiffs seek to certify a Class for settlement purposes under Rule 23(b)(3), which has two components: predominance and superiority. When assessing these factors, the Court may consider that the class will be certified for settlement purposes only; a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Predominance is established if "common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations omitted). With respect to superiority, the Court considers whether "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In this case, the common factual and legal questions all cut to the issues central to the litigation, namely, whether Advocate installed tracking technologies on its website and MyChart patient portal and disclosed patients' Private Information to unauthorized third parties without their consent. Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the root of the controversy, and the answers will be the same for each Class Member. Because the class-wide determination of these issues will be the same for everyone and will determine whether any Class Member has a right of recovery, the predominance requirement is readily satisfied.

Likewise, the superiority requirement is readily satisfied. The Settlement would relieve the substantial judicial burdens caused by repeated adjudications in individual trials against Advocate. *See Ross v. Gossett*, 33 F. 4th 433, 440 (7th Cir. 2022) (affirming the trial court's finding that "a class action would serve the economies of time, effort and expense and prevent inconsistent results."). Adjudicating individual actions is impracticable. The amount in dispute for individual class members is too small, the technical issues relating to the Pixel Technologies are too complex, and the required expert testimony and document review would be far too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit— at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and potentially lead to inconsistent rulings. Because this Litigation is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.").

## B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances, and was Resoundingly Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2)(B). The latter rule necessitates that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175 (1974). Rule 23(e) gives the

9

Court "virtually complete discretion" as to the manner of service of settlement notice. *See Eirhart v. Libbey-Owens-Ford Co.*, 1990 WL 223029, 921 F.2d 278, at *1 (7th Cir. 1990).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. Class Counsel Final Approval Decl., ¶ 13 For example, Class Counsel drafted a single postcard notice with a tear-off claim form that has contributed to the incredible claim rate in this case. *Id*. Class Counsel's extensive experience in handling class action settlements that include pro rata cash payments permitted them to make the informed decision to utilize the simple tear-off claim form to boost the amount of claims submitted. *Id*. ¶ 14. In total, notice was sent to 2,494,221 Class Members. Kroll Final Approval Decl., ¶ 8. In addition to the direct notice plan, the Settlement Administrator created the dedicated Settlement Website (https://www.advocateaurorasettlement.com). *Id.* ¶ 6.

The Settlement Administrator states that "following all Postcard Notices re-mailings, Kroll has reason to believe that Postcard Notices likely reached 2,494,221 of the 2,540,567 persons to whom the Postcard Notice was mailed, which equates to a reach rate of the direct mail notice of approximately 98.18%." *Id.* ¶ 11. A notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) ("99.3% of Class Members received the Long Form Notice…. This goes well beyond the 70-95% notice that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process."), citing Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010).[2]

---

[2] www.fjc.gov/sites/default/files/2012/NotCheck.pdf

The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). ECF No. 35-2 at Exs. B and C. These notices were also posted to the Settlement Website.[3] The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how to opt out of or object to the Settlement. *Id*. The Court should find that the Class received the best notice practicable under the circumstances in compliance with Rule 23 and the Due Process Clause. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

### C.  The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The Seventh Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of proceedings and the amount if discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal citations omitted). "This analysis does not focus on individual components of the settlement, but rather views it in its entirety in evaluating its fairness." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 933 (N.D. Ill. 2022) (internal quotations omitted).

---

[3]www.advocateaurorasettlement.com/home/7675/DocumentHandler?docPath=/Documents/Advocate_Long_Form_Notice_FINAL.pdf and www.advocateaurorasettlement.com/home/7675/DocumentHandler?docPath=/Documents/Advocate_Aurora_Foldover_Postcard_with_Claim_form_FINAL.pdf.

The 2018 amendments to Rule 23(e) also contain specific elements for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include whether:

A. the class representatives and class counsel have adequately represented the class;
B. the proposal was negotiated at arm's length;
C. the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
D. the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018 amendment*. All the case law and 23(e) factors weigh in favor of granting final approval here.

### 1. Plaintiffs' Case Was Risky and the $12,225,000 Settlement Fund is a Substantial Recovery

Similar pixel data privacy cases in this Circuit have faced substantial hurdles in surviving the pleading stage. *See, e.g., Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Rush I*"); *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023). *Kurowski* was recently revisited by the trial judge in that case and reversed to now permit certain damages claims. *See Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023). However, at the time of settlement at issue in this case, *Rush I* was one of the only motion to dismiss opinions that had been issued in a pixel privacy case. That decision—one within the Seventh Circuit issued by a well-respected Court (Judge Kennelly) finding no viable damages claims—injected significant additional risk to this already risky data privacy class action case and certainly weakened Plaintiffs' damages claims.

Despite the presence of *Rush I*, Class Counsel and Plaintiffs were able to gather substantial discovery from Advocate. Class Counsel Final Approval Decl., ¶ 7. Utilizing the settlement discovery it received from Advocate, Plaintiffs negotiated a substantial common fund settlement while facing a same-Circuit decision indicating that similar plaintiffs had no damages. *Id.*

Furthermore, the present Settlement was only reached after two full-day mediation sessions under the guidance of Ret. United States Magistrate David E. Jones and significant additional negotiations beyond those mediations. *Id.* The Settlement resulted from extensive, contentious, arm's length negotiations between counsel with many decades of experience in handling complex, class action litigation. *Id.* Settlement negotiations in this case took place over the course of several months prior to finalizing the Settlement Agreement. *Id.* ¶ 8. No collusion existed during the settlement process. *Id.* This factor supports final approval of class action settlement.

### 2. The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiffs Warrants Final Approval of the Settlement

Class action cases are inherently complex and risky. *B. Sanfield, Inc. v. Marshall Field & Co.*, No. 90 C 20192, 1991 WL 166942, at *2 (N.D. Ill. Feb. 25, 1991) (noting that "[c]lass action lawsuits are inherently complex"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *Hunter v. Booz Allen Hamilton*, No. 2:19-cv-00411, 2023 WL 3204684, at *6 (S.D. Ohio May 2, 2023). While nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class action in an especially risky and novel area of data privacy. Similar pixel data privacy cases in this Circuit have faced substantial hurdles in making it past the pleading stage. *See, e.g., Rush I*, 2023 WL 2349606; *Hartley*, 2023 WL 7386060. This case is no different—it was fraught with numerous risks, including that

Plaintiffs would still have to survive a motion to dismiss, conduct complex and expensive expert discovery, and obtain class certification. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."); *Leung v. XPO Logistics, Inc*., 326 F.R.D. 185, 197 (N.D. Ill. 2018) (noting that the existence of "substantial motion practice on class certification and a possible summary judgment motion, plus trial and appeal" supports a finding that "continued litigation is likely to be lengthy, complex, and expensive."). While Class Counsel remain confident in Plaintiffs' claims, there is a recognized element of risk in any litigation, particularly complex and expensive privacy litigation. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."); *Adams v. Aztar Indian Gaming Co., LLC*, No. 3:20-cv-143, 2023 WL 6536785, at *5 (S.D. Ind. Aug. 11, 2023) (noting that "[c]ontinuing to litigate the case will require vast expense and a great deal of time, on top of that already expended, as well as expose it to the inherent risk of continued litigation."). This factor supports final approval of class action settlement.

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data privacy cases, including at least one court that denied class certification in a similar case during the course of the Parties' settlement negotiations. *See Doe v. Medstar Health, Inc.*, No. 24-C-20-000591, 2023 WL 4931348 (Md.Cir.Ct. Mar. 10, 2023); s*ee also, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). Further, even if Plaintiffs successfully obtain certification of a damages class, the certification would not be definite and could be challenged on a motion to decertify or interlocutory appeal. *Long v. HSBC USA Inc.*, No. 14-cv-6233, 2015 WL 5444651, at *11 (S.D.N.Y. Sept. 11, 2015)

("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations raised by Plaintiffs and has made it clear that it would vigorously defend the case. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all. The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim and delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor also favors granting final approval.

### 3. The Class Overwhelmingly Supports the Settlement

In another data privacy settlement in this District, the court found that the class favored the settlement when 137 of the 2.4 million class members opted out of the settlement, one class member objected, and the claims rate was 1.46%. *In re Forefront Data Breach Litig.*, No. 21-cv-887, 2023 WL 6215366, at * 4 (E.D. Wis. Mar. 22, 2023). In comparison, this Litigation includes

approximately 2.5 million class members, 71 opt out requests, 5 objections, and a valid claims rate exceeding 20%. *See* Kroll Final Approval Decl., ¶¶ 7, 12, 15. The Class's reaction is more favorable in this case in that there are fewer opt outs and an exponentially higher claims rate. A valid claims rate of approximately 20.86% is an outstanding claims rate in a data privacy class action settlement and indicates the Class overwhelmingly supports the Settlement. Class Counsel Final Approval Decl., ¶¶ 11-12; *see also In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 629 (N.D. Cal. 2021) (describing "a claims rate of around 22%" as "an unprecedently positive reaction by the class"); *cf. Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[A] claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness.").

In addition, Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits. Class Counsel Final Approval Decl., ¶ 24; *see also* ECF Nos. 39-2 through 39-11 (declarations in support from the 10 Class Representatives in this case). As the result of settlement discovery conducted and extensive settlement negotiations, the Parties were able to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### 4. Opposition to the Settlement is Minimal and is Meritless

Of the approximately 2,540,567 Class Members, only five have submitted objections, or approximately 0.0002% of the Class. The scarceness of objectors challenging the Settlement is particularly noteworthy and strongly supports a finding that the Settlement is "fair and reasonable." *Am. C.L. Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (granting final

approval of settlements and finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements . . . is strong circumstantial evidence in favor of the settlements").

All five objections lack merit. One objector claims that Advocate Aurora provides "a necessary function to the community" and therefore should not be required to pay any money. Three objectors contend that the cash payment amount is too low. A final objector (represented by counsel whose primary business is objecting to class action settlements) has levied an everything-but-the-kitchen sink objection that ignores both Seventh Circuit law and the actual facts of this case and the Settlement. As explained, the last objection serves no purpose other than to obfuscate final approval of an excellent class action settlement. Because all of these objections are meritless, this factor also supports final approval.

### a. Stanley E. Guokas's Objection is Well-Intentioned but Unavailing

Class Member Stanley E. Guokas objects to the Settlement because of "the need for [Defendant] to continue to supply a necessary function to the community" and because "[Defendant] is needed, provides quality service at an affordable price." Guokas Objection, ECF No. 45-1 at 2. While Mr. Guokas' support for his local hospital is admirable, his objection is devoid of any real critique of the Settlement terms and does nothing to challenge the fairness, reasonableness, and adequacy of the Settlement. His objection should be overruled.

### b. Mary Boryu, Christine Gleason, and Tyler Dorner's Objections Fail Because They Had the Ability to Opt-Out of the Settlement and Generally Complain the Settlement Amount is Too Low

Class Members Mary Boryu, Christine Gleason, and Tyler Dorner's object to the Settlement because they believe the cash payments of up to $50 are too low. Boryu Objection,

ECF No. 40 at 2; ("I am <u>objecting</u>. The $50 will only pay for a few loafs [sic] of bread.") (Underline in original); Gleason Objection, ECF No. 45-2 at 2 ("I object to the settlement of 50$ [sic]."); Dorner Objection, ECF No. 45-3 at 2 ("I am objecting to the Settlement amount. If Advocate Aurora (allegedly) disclosed my personal information to third parties without my consent, then the potential for privacy harm damage as a result is worth more than $50.").

Courts have repeatedly concluded that a class member's objection to a settlement because the payment amount is too low is improper because the class member may opt out of the settlement and seek a potentially higher individual recovery. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019) (overruling various objectors because "objectors' reservations about the amount of the settlement could have been resolved by simply opting out of the class and filing separate suit"); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 497 (N.D. Ill. 2015) (overruling twenty (20) objections that claimed the settlement was inadequate because "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").[4] Objections also have been found to be unpersuasive when, as here, the objector submits no evidence to support his or her claim that the settlement payment is too low. *Rosado*, 2016 WL 3401987, at *9; *Nunez*, 292 F. Supp. 3d at 1042. Accordingly, Class Members Boryu, Gleason, and Dorner's objections should be overruled.

---

[4] *See*, *e.g.*, *Rosado v. Ebay Inc.*, No. 5:12-CV-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016) ("If the objector believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017) (finding an objection unpersuasive, in part, because the class member was free to opt out if he or she believed that the settlement amount was too low). *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 321 (N.D. Cal. 2018) (overruling twenty-eight (28) objections that claimed "the Settlement is too low or otherwise insufficient"; "the positive response from the Class favors approval of the Settlement.").

### c. Class Member Theodore Wynnychenko's Spray-Shot Objection Should Be Overruled

Class Member Theodore Wynnychenko ("Wynnychenko") presents a litany of objections to the Settlement that all boil down to the same point—Wynnychenko believes the requested attorneys' fees are too high. ECF No. 42 ("Wynnychenko Objection"). Notably, Wynnychenko is represented by Hamilton Law Institute, an entity that specializes in objecting to class action settlements, mostly for the purpose of challenging plaintiffs' attorneys' fees. *See, e.g. In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 0:21-MD-3015, 2023 WL 2284684, at *10 (S.D. Fla. Feb. 28, 2023). Despite his counsel's experience with objecting to many class action settlements, the Wynnychenko objection and its law-review-style policy arguments ignore the actual facts and fail to properly identify and apply Seventh Circuit law. Moreover, as the district court in *In re Johnson & Johnson* found in overruling a similar objection to a fair and reasonable attorneys' fee request, "The lawyers have done their work. There is nothing at all collusive. Claimants availed themselves of top lawyers without leaving their homes or even spending one dime." *Id*. at *11 The Wynnychenko Objection should be overruled in its entirety.

### i. Attorneys' Fees of 26% of the Settlement Fund are Appropriate

Despite Wynnychenko's baseless assertion that a 35% fee award already greatly exceeds the market-approximating rate, Class Counsel's request for $3,250,000.00 is reasonable and consistent with market rates and with Seventh Circuit precedent. The Seventh Circuit has held:

> When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis. The typical contingent fee is *between 33 and 40 percent* ….

*Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (approving 38% of $20 million settlement in attorneys' fees) (emphasis added).[5]

Courts in this Circuit widely observe the customary contingency agreement of 33% to 40% of the total recovery. *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Retsky Fam. Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"); *Leung*, 326 F.R.D. at 202 ("A one-third award is in line with the Seventh Circuit's suggestion in *Pearson* that 'attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.'"); *Neeck v. Badger Bros. Moving, LLC*, No. 19-CV-834-WMC, 2021 WL 1945820, at *3 (W.D. Wis. May 14, 2021) ("Here, plaintiffs' request represents one-third of the settlement fund, including costs. This court has previously approved awards of attorneys' fees amounting to one-third of the settlement fund in similar cases."); *King v. Trek Travel, LLC*, No. 18-CV-345-WMC, 2019 WL 6790398, at *3 (W.D. Wis. Dec. 12, 2019) (same).

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013), citing *Kirchoff*, 786 F.2d 320. This case presented unique and complex difficulties, a novel area of the law, and headwinds in the form of two recent decisions in similar cases granting a motion to dismiss and denying class certification. All those factors warrant a fee consistent with the market.

---

[5] Accounting for inflation, $20 million in 1998 equates to over $35 million in 2024. *See* https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator.

Courts within the Seventh Circuit consistently award attorneys' fees of 35% of the common fund in class action cases. *See*, *e.g.*, *Karpilovksy v. All Web Leads, Inc.*, No. 2017-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees amounting to 35% of the entire settlement fund); *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *Kirchoff*, 786 F.2d at 324 (finding 40% to be "the customary fee in tort litigation"); *Behrens v. Landmark Credit Union*, No. 17-CV-101-JDP, 2018 WL 3130629, at *16 (W.D. Wis. June 26, 2018) ("And generally, a 33 to 40 percent contingency fee is considered consistent with the market rate and reasonable."); *In re Herff Jones Data Breach Litig.*, No. 1:21-cv-1329, ECF No. 73 (S.D. Ind.) (awarding attorneys' fees and expenses of 35% of the $4,350,000 settlement fund in a data privacy class action). Class Counsel's attorneys' fee request of $3,250,000 (26.6% of the Settlement Fund) is below the range typically approved by courts within the Seventh Circuit and is reasonable.

Even examining the fee as a percentage of the net settlement amount, the fee request remains reasonable. Accounting for deductions for administrative expenses, which include the costs of Notice and settlement administration through completion of the Settlement estimated to be roughly $2,750,000, litigation costs and expenses amounting to $23,356.02, and Service Awards of $3,500 to each of the Class Representatives amounting to $35,000, the net settlement fund amounts to $9,416,643.98. Class Counsel's fee request of $3,250,000 represents roughly 34.5% of the net settlement fund, which remains consistent with the market rate in the Seventh Circuit. *See*, *e.g., Karpilovksy*, *v. All Web Leads, Inc.,* No. 2017-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees amounting to 35% of the entire settlement fund, which amounted to approximately 38% of the net settlement fund); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (attorneys' fees awarded to class counsel should not exceed half of the total amount of

money going to class members and their counsel); *In re Forefront*, 2023 WL 6215366 (fee award of 33.33% of the settlement fund and 41% of the net settlement fund).

### ii. Class Counsel's Fee Request Complies with Seventh Circuit Guidance Regarding Fee Multipliers

"The Seventh Circuit's market method entails no lodestar cross-check." 5 Newberg & Rubenstein on Class Actions § 15:102 (6th ed.). Yet, Wynnychenko argues the Seventh Circuit has an established "presumptive 2.0 multiplier ceiling." Wynnychenko Objection at 9. Class Counsel's revised fee request of $3.25 million largely moots Wynnychenko's 2x multiplier argument, because the current lodestar multiplier is approximately 2.04, and will almost certainly be less than 2.0 when all the work of finalizing this Settlement is concluded. Class Counsel Final Approval Decl., ¶ 18.

To the extent this objection retains any vitality, it still lacks merit. Wynnychenko references three cases, the most recent from 1994, to argue a loadstar multiplier of two "might" be a sensible ceiling. Conveniently, his objection ignores pertinent case law and holdings from this Circuit and around the country directly contradicting his argument. First, the Seventh Circuit has rejected any cap on a multiplier. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("The Adamski Objectors' lodestar argument—that any percentage fee award exceeding a certain lodestar multiplier is excessive—echoes the "megafund" cap we rejected in *Synthroid*."). Consistent with that, the Seventh Circuit has affirmed awards with multipliers higher than five. *Id*. (affirming 5.85x lodestar multiplier); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, No. 10-CV-426-WMC, 2015 WL 13546111, at *6 (W.D. Wis. Jan. 5, 2015) (approving 2x lodestar multiplier); *Keeling v. Esurance Ins. Co*., 660 F.3d 273, 275 (7th Cir. 2011); *accord In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 943 ("In practice, most multipliers fall between one and four"). One federal court in a similar privacy action recently allowed a multiplier of 4.71x

(and was later affirmed by the Ninth Circuit). *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 633, *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022).

The Seventh Circuit has held that a multiplier is appropriate when counsel assumes a risk of non-payment in taking a suit. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991). Moreover, the Seventh Circuit has stated that a court "must award a multiplier when attorney's fees are contingent upon the outcome of the case (*i.e.,* there is the possibility that the attorney will not receive any fee)." *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998). The allowance of a particular multiplier is a matter of discretion and requires "'a retroactive calculation of the probability of success as measured at the *beginning* of the litigation.'" *Id.* (emphasis added). The overall standard is "whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). As discussed throughout this memorandum and in various prior pleadings, this case carried significant risks. Plaintiffs would still have to survive a motion to dismiss and need to gain class certification in a pixel disclosure case when no federal case to date has attained class certification. *Schulte*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation"). Further, the greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958, citing *Kirchoff*, 786 F.2d 320. Because Wynnychenko improperly attempts to cap the multiplier at two, despite courts in the Seventh Circuit allowing multipliers significantly exceeding his suggested cap, his objection should be overruled.

### iii. *Market Rates in Other Data Privacy Cases are Controlling*

"An appropriate attorneys' fee award is one that 're-creates' the market for the provided legal services." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. Wis.

2009) (Stadtmueller, J.), citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir.2000) (stating that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case."). Wynnychenko compares this case to securities class actions, which have larger settlement funds and plaintiffs who are large institutional investors. *See* ECF No. 42 at 4 n.3. The better comparisons are to cases in similar practice areas. *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2021 WL 5709250, at *11 (N.D. Ill. Dec. 1, 2021) (awarding attorneys' fees of 1/3 the $169,601,600.00 common fund in antitrust case and finding that "[m]ost persuasive are the large number of antitrust cases in this circuit that have awarded one-third of the common fund as attorney's fees.").

Here, the market should be based on contingency fee awards in privacy cases—not securities litigation. Attorneys' fee rates approved in other data privacy cases show the fees requested here are consistent with market rates. Within Wisconsin, Class Counsel is aware of one other data pixel settlement: *John v. Froedtert*, No. 23-CV-1935 (Milwaukee County Circuit Court) consisting of a finally approved $2,000,000 settlement fund and a fee award of $700,00 which is 35% of the total settlement fund. Another data pixel settlement identified in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards is *In re Novant Health, Inc.*, No. 1:22-cv-00697 (M.D.N.C.) ($6,600,000 settlement fund including preliminary approval of a fee award of 33.33% of the total settlement fund). Recent Seventh Circuit data breach privacy cases further establish a market rate between 33.33%-35% of the total settlement fund. *See In re Herff Jones Data Breach Litig.*, No. 1:21-cv-1329, ECF No. 73 (S.D. Ind.) (awarding attorneys' fees and expenses of 35% of the $4,350,000 settlement fund in a data privacy class action); *In re Forefront*, 2023 WL 6215366, at *8 (fee award of 33.33% or $1,250,000 of the $3,750,000 settlement fund that was 41% of the net settlement fund). Class Counsel's fee request of 26.6% of

the entire Settlement Fund and 34.5% of the net settlement fund falls squarely within the market rate established by other data privacy class actions.

Also, the district court in *In re Johnson & Johnson*, *supra*, provides a commonsense rationale for why Class Counsel's fee request reflects actual market rates for practicing attorneys. In overruling a similar objection to attorneys' fees advanced by Wynnychenko's counsel, the district court stated the following:

> We know there were more than 209,000 claims filed. Let's assume each of those individuals had gone to local attorneys seeking representation on this matter. And let's assume that after a free consultation, each individual decided to go forward for personal and principle reasons and that each was able to afford their lawyer's $125 fee. The Court has selected this fee example because it is the cost to hire counsel in this jurisdiction for a speeding ticket where one is traveling ten miles above the speed limit. Most people with common sense would assume a report regarding a product with a potential carcinogen might cause more concern than a traffic infraction, but in any case, in this scenario the lawyers' collective fees would total $26,125,000 and no one would say a word.

*In re Johnson & Johnson*, 2023 WL 2284684, at *11. Carrying this real-world example through to this case, even if the over 500,000 claimants paid only $100 each for top-drawer representation on a novel data privacy case (which "might cause more concern than a traffic infraction"), a $50 million collective fee award would be justified. The fees sought here are 6.5% of $50 million and completely in line with actual market rates.

### iv. Class Counsel Complied with Fed. R. Civ. P. 23(h) and Were Not Required to Submit a Lodestar Crosscheck in their Motion for Attorneys' Fees

Wynnychenko next accuses Class Counsel of violating Fed. R. Civ. P. 23(h) by failing to include lodestar information in conjunction with the Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards. Wynnychenko Objection, at 9. A lodestar cross-check is not required in the Seventh Circuit. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology."); *In re*

*Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015) ("A district court is under no obligation to cross check fees against the lodestar."); *Bell v. Pension Comm. of Ath Holding Co., LLC*, No. 1:15-cv-02062, 2019 WL 4193376, at *5 (S.D. Ind. Sept. 4, 2019) ("In determining fees in a common fund class actions settlement the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"). In the Seventh Circuit, attorneys' fees awards may be calculated using "either the percentage method or the lodestar method." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 560 n.2 (7th Cir. 2022). The chosen method is within the district court's discretion. *Id.* It is not an abuse of discretion to forego a lodestar crosscheck. *Id.* at 567 n.9 ("the district court did not abuse its discretion when it concluded that a lodestar crosscheck was unnecessary"). Wynnychenko's objection effectively imposes a legal requirement that does not otherwise exist.

Courts in this Circuit and nationwide frequently approve fee requests based on the percentage-of-the-fund method alone, without performing a lodestar cross-check. *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (rejecting objection and holding that "the Court need not rely on a cross-check"); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012), *aff'd sub nom. Silverman*, 739 F.3d 956 (affirming 27.5% fee and stating "[i]t is unnecessary to resort to a lodestar calculation to reinforce the same conclusion"). Indeed, "[c]ourts choose not to put too much weight into this [lodestar] check or skip it entirely, cautioning that [t]he use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Wright*, 2016 WL 4505169, at *17 (quotation marks omitted).[6] Here, Class Counsel's request that the fee be

---

[6] *See also, e.g., In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979–980 (7th Cir. 2003) ("The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *7 (E.D. Wis. Mar. 22, 2023) (overruling objection and finding the "percentage method appropriate for assessing fees" because "class counsel accepted

calculated using a percentage of the common fund method is typical of common fund settlements. "When a class suit produces a fund for the class, it is *commonplace* to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis." *See Gaskill v. Gordon*, 160 F.3d at 362 (affirming 38% fee award of $8 million) (emphasis added).

Beyond that, Wynnychenko is aware that this case settled at a relatively early stage. He knows the non-reversionary common fund settlement is an outstanding result and the product of months of arm's-length negotiations and hard bargaining—preceded by two mediations, a thorough legal analysis of the facts, the exchange of extensive informal discovery (including about Defendant's use of pixel tracking tools, class size, and damages), and a lengthy consolidated class action complaint. In this context, courts have recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement. *See, e.g., Rankin v. Am. Greetings, Inc.*, No. 2:10-cv-01831, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("[W]here the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check.").

This is because, where counsel achieves an early settlement by focusing on "the most efficient path to results," they likely "reduce[] their lodestar, resulting in a higher multiplier when

---

this case on a contingent-fee basis"); *Pavlik v. FDIC*, No. 10 C 816, 2011 WL 5184445, at *5 (N.D. Ill. Nov. 1, 2011) ("The Court does not need to resort to a lodestar calculation to reinforce the same conclusion.); *Benson v. Doubledown Interactive, Ltd. Liab. Co.*, No. 18-cv-0525, 2023 WL 3761929, at *2-3 (W.D. Wash. June 1, 2023) (awarding a fee of $121.4 million, amounting to 29.3% of the benefits to class members without performing a cross-check); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (awarding a $11.25 million fee award amounting to 25% of the benefits to class members without performing a cross-check).

cross-checking [the] percentage-of-the-fund award." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *10 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019). But "that's a good thing," which should not be discouraged by using a lodestar cross-check to cut fees. *Id.* "Strategic and efficient lawyering not only encourages 'the just, speedy, and inexpensive determination of every action and proceeding' but also directly correlates with obtaining superb results." *Id.* And "if a court sometimes employs a lodestar cross-check, then self-interested entrepreneurial lawyers will conduct their affairs accordingly" and avoid early settlement. *Id.* In other words, a cross-check is merely a way to "sneak the lodestar method in the backdoor," and this "sends a bad message to future class action lawyers: don't resolve cases too quickly; drag them out to beef up your lodestar so your fee percentage isn't cut." Brian T. Fitzpatrick, *The Conservative Case for Class Actions*, Chicago: The University of Chicago Press (2019); *see also* Sandra R. McCandless et al., Am. Bar Ass'n, *Report on Contingent Fees in Class Action Litigation*, 25 Rev. Litig. 459, 471 (2006) (a cross-check "reintroduces the problems of the lodestar method. If [attorneys] know that their fee, when calculated as a percentage, will be 'crosschecked' by the lodestar, they have every financial incentive to put as many hours into the file as possible. They may do unnecessary work or delay settlement.").

Notably, Class Counsel achieved an excellent result for the Class, without resorting to protracted litigation, by devoting significant efforts to an efficient and early resolution. This approach reduced Class Counsel's lodestar compared to the alternative of protracted litigation. Still, it was the right approach—one that resulted in a significant and expeditious recovery for the Class while avoiding the risk that the Class would get nothing. Because Class Counsel proposes a

percentage of the fund fee award and a lodestar crosscheck is unnecessary, the absence of lodestar data is irrelevant, and the Wynnychenko Objection should be rejected.[7]

### v. Data Privacy Class Action Cases Remain Risky

Wynnychenko also argues that this case lacks any real risk. This argument is untethered to the reality of prosecuting data pixel privacy class action cases. As previously discussed in section III(C)(1-2) above, at the time Plaintiffs brought the case and the Parties negotiated the Settlement, data pixel privacy class actions were novel. The fact that many cases had been *filed* is irrelevant; few cases had been settled or even had motions to dismiss decided. The very real risk in these cases was further brought home when the *Rush I* decision, within this same Circuit, granting the motion to dismiss was handed down on March 3, 2023, and class certification was denied in the *Medstar Health* case one week later on March 10, 2023. Both of these decisions came in the middle of the Parties' intense settlement negotiations. Accordingly, Wynnychenko's claim that this case is not risky rings hollow and should be overruled as a basis for objection to this Settlement.

### vi. Class Counsel Properly Notified the Class that the Fee Request Would Be Up to 35% of the Settlement Fund, Expenses Would be Capped at $30,000, and the Motion for Attorneys' Fees and Expenses Would be Posted on the Settlement Website After it was Filed

Wynnychenko complains the settlement website "only" publishes the fee motion (which spells out the precise percentage and dollar amounts sought as fees, expenses, and service awards) and is missing the supporting memorandum of law. Wynnychenko Objection at 13-14. However, Wynnychenko fails to cite any authority holding that a memorandum (as opposed to just the

---

[7] Even though a lodestar crosscheck is not required, Plaintiffs' Counsel's lodestar confirms the reasonableness of the fee request in this case. Class Counsel and Plaintiffs' Counsel have devoted 2075.50 hours prosecuting this matter on behalf of the Plaintiffs and the Class with a lodestar total of $1,590,114.55. Class Counsel Final Approval Decl., ¶ 18. The requested fee award of $3,250,000.00 is a present multiplier of 2.04x. *Id.* This multiplier will continue to decrease as Class Counsel's lodestar increases through final approval and the claims process. *Id.*

motion) is required to be published on the settlement website in a case like this. Instead, Wynnychenko cites *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), which involved a coupon settlement—not a cash common fund.[8] In *Redman*, the plaintiffs failed to even file their fee petition before the objection deadline.

Rather than require plaintiffs to publish a memorandum and supporting documents on the internet, Rule 23(h) simply states that "notice of the motion" should be "directed to class members in a reasonable manner." *Redman*, 768 F.3d at 637, quoting Fed. R. Civ. P. 23(h). Unlike *Redman*, the fee motion in this case was both filed and posted to the settlement website well before the objection deadline. And contrary to Wynnychenko's arguments, "Rule 23 does not require the settlement notice to contain every last bit of information necessary to file an objection." *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 930 n.20 (finding class notice adequate and rejecting objection that "only the objection deadline, and not the deadline for responses to the fee petition, appeared on the settlement notice").

Class Counsel's requested fees and expenses were unambiguously disclosed in the Motion for Attorneys' Fees (ECF No. 38), the Preliminary Approval Order (ECF No. 36), the Settlement Agreement, the Long Form Notice, and the Postcard Notice—all of which are available on the Settlement Website. With this information, Wynnychenko is surely capable of forming his objection. And if he had any genuine questions regarding the Settlement, he could have easily contacted Class Counsel or the Settlement Administrator. *Gehrich v. Chase Bank USA, N.A.*, 316

---

[8] Coupon settlements are difficult to value and heavily scrutinized under the Class Action Fairness Act ("CAFA"). *See Redman*, 768 F.3d at 636-37 ("This case illustrates why Congress was concerned that class members can be shortchanged in coupon settlements …."). CAFA expressly states that "[i]f a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be *based upon the amount of time class counsel reasonably expended* working on the action." 28 U.S.C. § 1712(b)(1) (emphasis added).

F.R.D. 215, 232 (N.D. Ill. 2016) ("Given the amount of other information available to potential claimants, this does not render notice inadequate, and inquisitive class members surely could have requested a copy of those papers if they truly were interested."). Furthermore, courts within this District have overruled objections to plaintiffs' counsel's fee requests when the objector similarly complained that he was not able to be fully apprised about the fee request. *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at \*6-7. Wynnychenko and the Class had more than adequate notice of the requested attorneys' fees (a request that has now been substantially and voluntarily reduced to account for the dramatic increase in necessary settlement administration costs) pursuant to the multi-pronged notice plan, which the Court approved. The objection should be overruled.

### vii. *Courts Routinely Approve Class Action Settlements Wherein Any Objections or Exclusions are Submitted Via Mail*

Next in Wynnychenko's laundry list of complaints is an accusation that the Settlement meaningfully "hinders the process of objection and exclusion." Wynnychenko Objection at 16-19. His arguments regarding the supposed difficulty of objecting are unavailing. Evidently Wynnychenko was not deterred, and neither were the other five objectors or seventy-one Class Members who opted out. There is simply no evidence suggesting anyone was deterred from objecting or seeking exclusion. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 970 ("[T]he objectors have not presented any evidence that [the deposition requirement] deterred anyone from objecting, including themselves.").

The requirement that Class Members mail written objections to counsel for both Plaintiffs and Defendant, or mail requests for exclusion to the settlement administrator, are entirely

consistent with Rule 23 and are common features of class action settlements.[9] Indeed, the exemplar class notice authored by the Federal Judicial Center[10] in 2016 recommends such a procedure: (1) "To exclude yourself from the settlement, you must *send a letter by mail*" to the administrator, and (2) "To object, you must *send a letter* saying that you object to *North v. XYZ*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. *Mail* the objection to these *three different places* [the court, class counsel, and defense counsel] postmarked no later than [date]." *See* Federal Judicial Center Template Notice, https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (2016), at Sections 13 & 18. There is nothing suspect or unreasonable about this procedure. And Class Members submitted 363,304 paper claim forms—an indication that service by mail is not onerous in any way. Kroll Final Approval Decl., ¶ 12.

Wynnychenko also argues that requiring objectors and their counsel to provide information about other cases in which they have objected (or represented objectors) in the past three years is unreasonable. Wynnychenko Objection at 18. Courts disagree and often require such information. The Eleventh Circuit, for example, recently overruled this same objection. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021) ("The requirements the District Court imposed were not particularly burdensome" including that "each objection include: the objector's name and address; the objector's personal signature; the grounds for the objection;

---

[9] Courts regularly direct service of objections by mail. *E.g., Beaver v. Tarsadia Hotels*, No. 11-cv-01842, 2017 WL 2268853, at *7 (S.D. Cal. May 24, 2017) (requiring class members to serve written objections by mail on counsel for plaintiffs' and defendants); *DeMarco v. Avalonbay Communities, Inc.*, No. 15-628, 2017 WL 960355, at *3 (D.N.J. Mar. 13, 2017) ("the procedure of requiring opt-outs and objections to be sent to the Clerk of the Court and to counsel for the parties to this federal action is neither onerous nor unusual in a class action").

[10] The Federal Judicial Center is the education and research agency of the United States federal courts. It was established by Pub. L. 90–219 in 1967.

previous objections in recent class actions; and dates on which the objector was available to be deposed."). Other courts are in accord. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 11-MD-2258-ABJ (MDD), 2014 WL 7800046, at *4 (S.D. Cal. July 10, 2014) (requiring the objector and objector's counsel to state whether they have previously objected, or served as a named plaintiff or class counsel); *Keith v. Back Yard Burgers of Neb.*, No. 8:11-CV-00135, 2014 WL 4781914, at *5 (D. Neb. Sept. 23, 2014) (requiring objectors to identify all other cases in which they filed an objection). Requiring objectors and their counsel to disclose other cases in which they objected to a class action settlement will deter professional objectors, "whose objections amount to a 'tax that has no benefit to anyone other than to the objectors' but serves to 'tie up the execution of [a] Settlement and further delay payment to the members of the Settlement Class ….'" *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247, 2012 WL 3984542, at *5 (D. Minn. Sept. 11, 2012) (citation omitted).

Simply put, the objection and exclusion procedures preliminarily approved by this Court are routine. The notice clearly explains the process for lodging objections and includes contact information for Class Counsel and Defendant's counsel. There is a settlement administration website from which Settlement Class members can gain additional information. And there is no requirement that Settlement Class members retain attorneys in order to lodge objections. The objection procedure is standard for cases of this kind and simple to follow.

### viii.    It is Permissible to Request Court Approval of a Cy Pres Recipient When it is Determined that Any Residual Funds Exist

Relying almost entirely on out-of-circuit authority, Wynnychenko next objects that the *cy pres* recipients were not selected prior to the objection deadline. Wynnychenko Objection at 14-

15. According to Wynnychenko, he may be compelled to support causes he opposes and cannot form an informed objection. *Id.* But it is Wynnychenko's argument that is uninformed.

Buried at the end of his argument is a concession that the Seventh Circuit overruled a virtually identical objection. In *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018), the settlement directed that consideration to the class, incentive awards, administrative expenses, and attorneys' fees be paid from the common fund. *Id.* at 794. If some claimants did not cash their checks, then money will be left over, and those remaining funds will go to an unidentified but "appropriate *cy pres* recipient" to be "*approved by the district court*." *Id.* (emphasis added). A class member, however, objected that the "notice sent to the class insufficiently described the process for selecting a *cy pres* recipient." *Id.* at 798. The Seventh Circuit "quickly dispose[d]" of the objection, reasoning that the notice told class members that a *cy pres* recipient "might be selected after the second round of payments, gave instructions for recommending recipients, and provided a website where members can learn more about the settlement," which is "enough to meet the notice requirements of Fed. R. Civ. P. 23." *Id.*[11]

So too here. The Settlement provides that "Residual Funds" will be distributed to one or more unnamed "Charitable Healthcare Recipients" as a *cy pres* distribution. Settlement Agreement § II.13.kk. The Settlement explains that the Charitable Healthcare Recipients shall be "501(c)(3) non-profit organizations, over which Defendant does not have sole control or majority ownership,

---

[11] Courts outside the Seventh Circuit are in accord. *See, e.g., In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019) ("there is no case law in the Second Circuit requiring the court to identify a specific *cy pres* recipient prior to approving a settlement"); *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (the "failure to identify the *cy pres* recipients is not a due process violation. Class members know there is a possibility of a *cy pres* award and that the Court will select among recipients proposed by the parties at a later date. This knowledge is adequate to allow any interested class member to keep apprised of the *cy pres* recipient selection process.").

that provide health care to people in Wisconsin and/or Illinois that may receive portions of the Settlement Fund." Settlement Agreement § II.13.c. Importantly, like *Caribbean Cruise Line, Inc*., the *Court must approve the proposed cy pres recipients* before distribution. Settlement Agreement § VI.41 ("The Parties will return to the Court seeking approval as to the disposition of the remaining Net Settlement Fund, including approval of the proposed Charitable Healthcare Recipients."). All this information is available in the Settlement Agreement published on the settlement website.

Wynnychenko largely relies on the Ninth Circuit's decision in *Dennis v. Kellogg Co*., 697 F.3d 858, 867 (9th Cir. 2012), arguing it is "no answer that 'the charities will be identified at a later date and approved by the court.'" Wynnychenko Objection at 14-15. However, that "Ninth Circuit precedent . . . does not condition settlement approval on *cy pres* recipient identification." *In re Petrobras Sec. Litig.*, No. 14-cv-9662, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018). "Rather, the Ninth Circuit has explicitly held that *cy pres* issues 'become[ ] ripe only if the entire settlement fund is not distributed to class members.'" *Id.*, citing *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 966 (9th Cir. 2009) (declining to address objectors' challenge to a class settlement's *cy pres* provision as "no *cy pres* disbursement in imminent").

In any event, his objection is moot. As of February 22, 2024, the Settlement Administrator has received 570,963 claims, of which 529,912 have already been validated. Kroll Final Approval Decl., ¶ 12. As noted above, those valid claims will exhaust the Net Settlement Fund and the only potential *cy pres* distribution will be for uncashed checks by validly claiming Class Members, an unknown figure that is traditionally nominal. *See Aranda v. Caribbean Cruise Line, Inc*., No. 12 C 4069, 2017 WL 818854, at *5 (N.D. Ill. Mar. 2, 2017) (noting it is "overwhelmingly likely that any unclaimed funds designated for *cy pres* disposition" will be "small"). Accordingly, the process

for selection and distribution of *cy pres* funds is sufficient under *Caribbean Cruise Line, Inc*. and Wynnychenko's objection should be overruled.

### ix. The $50 Cap on Settlement Payments to Class Members is Not Arbitrary and Will Not Limit Class Member Payments in This Case

Wynnychenko asserts two complaints relating to the $50 cap under the settlement. First, he takes issue with the *cy pres* provision under the Settlement. Second, he claims that the $50 cap is arbitrary. These arguments are a prime example of Wynnychenko and his counsel's penchant for objecting without regard for the actual facts of this case. As of the filing of Wynnychenko's objection, more than 160,000 claims had been made, making it highly unlikely the $50 cap would be implicated at all. Undaunted by such facts, Wynnychenko contends the numbers are misleading because they are not an indication of the actual "valid" claims rate. Wynnychenko goes as far as to include a chart including eleven cases that purport to have "a significant percentage" of invalid claims. Wynnychenko Objection at 21.

Regardless of Wynnychenko's Counsel's experience when professionally objecting to other class action settlements, the valid claims rate in this case is more than 20%. The 529,912 valid claims are quite high and make the objection to the $50 cap irrelevant. Based on Class Counsel's extensive experience in class action settlements – including in particular in privacy cases – Class Counsel and the Settlement Administrator crafted an easy claims process that included a postcard notice with a simple, tear-off claim form an attestation under penalty of perjury and a straightforward online claims process to promote an easy overall claims process for the Class. Furthermore, to address the potential for invalid or fraudulent claims, the postcard notice and online claim portal required a class member ID to submit a claim. The well-designed claims process produced 570,963 claims, 529,912 of which (or 92.8%) have already been validated. Kroll

Final Approval Decl., ¶ 12. Based on the Settlement Administrator's evaluation of submitted claims and the current valid claims rate of 20.86% (529,912 valid claims from 2,540,567 Class Members), Class Member payments are currently projected at approximately $11.64. Class Counsel Final Approval Decl., ¶ 21. Wynnychenko's objection to the $50 cap therefore is moot.[12]

Wynnychenko's objection should be overruled.

### 5. Class Counsel Support the Settlement

In the Seventh Circuit, courts are "entitled to rely heavily on the opinion of competent class counsel." *Geatreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (internal quotation and citation omitted). Many courts have recognized Class Counsel's experience in handling class action cases, including privacy class actions in particular. *See, e.g., Okonski v. Progressive Cas. Ins. Co.*, No. 23-CV-01548, 2023 WL 6214529, at *2 (N.D. Ohio Sept. 25, 2023)(noting that Mr. Klinger and Milberg have "significant experience" in data privacy class action cases); *Bedont v. Horizon Actuarial Servs., LLC*, No. 1:22-CV-01565-ELR, 2022 WL 3702117, at *2 (N.D. Ga. May 12, 2022) (noting that class counsel in a data privacy class action, including Messrs. Coates and Klinger, "are well qualified to serve as Interim Co-Lead Class Counsel and that they will fairly, adequately, responsibly, and efficiently represent all Plaintiffs in the Cases in that role."); *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *4 (S.D. Ohio June 13, 2022) ("Class Counsel, the law firm Markovits, Stock & DeMarco, LLC, are qualified and are known within this District for handling complex cases including class action cases such as this one."); *Schellhorn v. Timios, Inc.*, No. 2:221-cv-08661, 2022 WL 4596582, at *4 (C.D. Cal. May 10,

---

[12] Even if the entire gross Settlement Amount were paid to valid claimants (something not at all contemplated by the Settlement Agreement or Notice), current valid claimants would still only be projected to receive approximately $23.07, below the $50 cap. In short, the $50 cap does not limit the pro rata cash payment available to Class Members that have submitted valid claims.

2022) (noting that Class Counsel, including "Terence R. Coates of Markovits, Stock & DeMarco, LLC, have extensive experience litigating consumer protection class actions ….").

Class Counsel also are experienced with litigating and settling data pixel privacy class action cases such as this one. *See, e.g., John v. Froedtert*, No. 23-CV-1935 (Milwaukee County Circuit Court) (Mr. Klinger served as class counsel for a finally-approved pixel data privacy class action settlement); *In re Novant Health, Inc.*, No. 1:22-cv-00697 (M.D.N.C.) (Messrs. Klinger and Coates Class Counsel serving as class counsel in a preliminarily-approved pixel data privacy class action settlement). Class Counsel Final Approval Decl., ¶ 10. As the result of informal discovery conducted, thorough case investigation that ultimately resulted in the filing of the 105-page Second Amended Consolidated Complaint including eleven causes of action, and extensive settlement negotiations including two full-day mediation sessions with Ret. Judge David E. Jones, Class Counsel are in a position to fully analyze the strengths and weaknesses of Plaintiffs' claims and determine that the Settlement at this stage of the litigation is appropriate. *Id*. ¶ 7. Accordingly, Class Counsel have the informed opinion that the Settlement is fair, reasonable and adequate, justifying final approval of this Settlement.

### 6. Plaintiffs' Obtained Ample Information to Forge the Substantial Settlement Fund

Plaintiffs took significant efforts to investigate the location of the Tracking Pixels on Advocate's websites, including hiring an expert to review Advocate's websites. *Id.* ¶ 4. Plaintiffs and Class Counsel also participated in significant vetting efforts to verify that the named Plaintiffs would be appropriate class representatives in this case. *Id*. ¶ 6. With this information in hand, Plaintiffs conducted additional legal and factual research that served for the basis of drafting the detailed Second Amended Consolidated Complaint alleging eleven causes of action. *Id*. Plaintiffs also received substantial informal discovery from Defendant before the February 2023 mediation

session and throughout the settlement negotiation process. *Id.* ¶ 7. Plaintiffs were able to make informed decisions about the size of the Class, merits of the Class's allegations and legal claims, and Defendant's financial resources available to pay for a settlement and/or judgment. *Id.* In conducting this due diligence, Plaintiffs have spent significant time and effort researching and preparing this case. *Id.* ¶ 18. Thus, this factor supports final approval of the Settlement.

### 7. The Other Rule 23(e) Factors Support the Settlement

To the extent not addressed above, the remaining Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The attorneys' fees of 26.6% of the common fund are well within the range of reasonableness for fees in a case of this nature and will not be paid until the Effective Date. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). There is no undisclosed agreement made in connection with the Settlement. Class Counsel Final Approval Decl., ¶ 24; *see also* Rule 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity for a *pro rata* payment of money. Rule 23(e)(2)(D). In total, all the factors to be considered when determining whether to grant final approval weigh in favor of finding that the Settlement is fair, reasonable, and adequate.

## IV. CONCLUSION

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant final approval of class action settlement, including permitting pro rata cash payments to Class Members who have submitted valid claims and awarding Service Awards in the amount of $3,500 to each Class Representative, $3,250,000.00 in reasonable attorneys' fees, $23,356.02 in litigation expenses, $2,750,000 in Settlement Administration expenses, and enter the proposed Order attached as **Exhibit 1**.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com
dgould@msdlegal.com

Gary M. Klinger
Alexandra M. Honeycutt
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252.0878
gklinger@milberg.com
ahoneycutt@milberg.com

*Class Counsel*

Nola J. Hitchcock Cross (WI Bar No. 1015817)
Mary C. Flanner (WI Bar No. 1013095)
**CROSS LAW FIRM, S.C.**
845 North 11th St.
Lawyers' Building
Milwaukee, WI 53233
Telephone: (414) 224-0000
Fax: (414) 273-7055
njhcross@crosslawfirm.com
mflanner@crosslawfirm.com

*Local Counsel*

Joseph M. Lyon
**THE LYON LAW FIRM**
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

Bryan L. Bleichner

40

**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-3700
bbleichner@chestnutcambronne.com

Stephen R. Basser
**BARRACK RODOS & BACINE**
One America Plaza
600 West Broadway, Ste. 900
San Diego, CA 92101
Telephone: (619) 230-0800
sbasser@barrack.com

John Emerson
**EMERSON FIRM LLP**
2500 Wilcrest, Ste. 300
Houston, TX 77042
Telephone: (800) 551-8649
jemerson@emersonfirm.com

Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, IL 60606
Telephone: (312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com

Bryan Paul Thompson
**CHICAGO CONSUMER LAW CENTER**
650 Warrenville Road, Suite 100
Lisle, IL 60532
Telephone: (312) 584-2614
Bryan.thompson@cclc-law.com

Michael Kind
**KIND LAW**
8860 S. Maryland Parkway, Suite 106
Las Vegas, NV 89123
Telephone: (844) 399-5463
mk@kindlaw.com
*Other Counsel for Plaintiffs*